Henry Z. SPELL, Plaintiff,

v.

Charles D. McDANIEL, et al.,
Defendants.

No. 84–06–CIV–3.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

July 12, 1984.

H. Gerald Beaver, Beaver, Holt & Richardson, P.A., Fayetteville, N.C., for plaintiff.

Robert C. Cogswell, Jr., Bobby G. Deaver, Fayetteville, N.C., for defendants.

## ORDER

JAMES C. FOX, District Judge.

Plaintiff, Henry Spell, initiated this action pursuant to 42 U.S.C. § 1983 by complaint filed January 26, 1984. Plaintiff seeks compensatory and punitive damages for injuries allegedly caused by police misconduct. Spell predicates his action on a deprivation of his constitutional rights substantively secured by the Fourth, Eighth and Fourteenth Amendments. Jurisdiction is based upon 28 U.S.C. § 1331 and § 1343.

Named as defendants are Charles McDaniel, the allegedly culpable individual officer of the City of Fayetteville Police Department, who directly inflicted the injuries upon plaintiff; William Dalton and Roger Holman, Command Sergeants within the City of Fayetteville Police Department and alleged supervisory officials in this action; William Johnson, officer in command of the Internal Affairs Division of the City of Fayetteville Police Department, charged with the duty of investigating allegations of police misconduct; Daniel K. Dixon, Chief of the Fayetteville Police Department; John P. Smith, City Manager of the City of Fayetteville with general supervisory power and responsibility over the previously named defendants; and, the City of Fayetteville, North Carolina. All defendants, except McDaniel, are sued solely in their official capacity.

There are a number of outstanding motions before the court. Defendant McDaniel has filed a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1), (b)(2) and (b)(6); Plaintiff has moved to amend his complaint to clarify his charge against the City of Fayetteville; defendants Dalton, Holman, Johnson, Dixon, Smith and the City of Fayetteville have filed a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1), (b)(2) and (b)(6); defendants Holman and Johnson have filed a motion for summary judgment; plaintiff has filed a 12(f) motion to strike defendants' affirmative defenses; defendant City of Fayetteville has filed a motion to strike plaintiff's prayer for punitive damages; and plaintiff has filed a motion to compel defendants to comply with plaintiff's request for production of documents, to which defendants have objected and moved for a protective order. The parties have extensively briefed the relevant issues and these matters are now ripe for disposition.

Before the court proceeds to address these contentions, some further description of the allegations in the complaint is in order as a preface to the discussions which follow. In this description as well as in the subsequent discussions, excepting only the discussions of jurisdictional issues and plaintiff's motion to strike, the court accepts the allegations of the complaint as true, as the law requires it to do. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nothing herein should be taken as indicating any view on the validity of the allegations of plaintiff's complaint.

Plaintiff alleges, with particularity, that on November 19, 1983, he was arrested by Officer McDaniel in Fayetteville for driving while impaired and possession of a controlled substance. McDaniel transported Spell to the Law Enforcement Center (LEC) for breathalyzer testing and arrest procedures. A breathalyzer examination was conducted before another Fayetteville police official, as required by North Carolina law. Upon completion of the examination, plaintiff was removed from the breathalyzer area in the basement of the LEC to the City Police Assembly Room whereupon McDaniel, without justification, assaulted Spell by repeatedly striking him

with his hands and by kneeing him in the testicles with such force that plaintiff suffered permanent loss of his right testicle. Spell has been rendered irreversibly sterile as a result of McDaniel's actions.

Plaintiff further alleges that McDaniel's actions were in furtherance of and under color of the official policy, practice, custom and procedure of the City of Fayetteville. In detail and with precision, plaintiff sets forth the following allegations against the remaining defendants:

(1). Defendants had knowledge, prior to this incident, of repeated allegations of police abuse and assaultive misconduct toward detainees and arrestees;

(2). defendants had prior knowledge of similar allegations of abuse against defendant McDaniel and refused to enforce established administrative procedures to insure the safety of detainees and arrestees;

(3). defendants established and enforced quota systems for arrests and citations thereby encouraging unlawful, and, at times, abusive arrests and detentions;

(4). defendants refused to discipline individual officers and employees found to have committed similar acts of abuse and misconduct;

(5). defendants refused to competently investigate allegations of abuse and assault alleged to have been committed by Fayetteville police officers;

(6). defendants reprimanded, threatened, intimidated, demoted and fired police officers who reported acts of abuse by other officers;

(7). defendants covered up acts of misconduct and abuse by police officers;

(8). defendants rewarded officers who displayed aggressive and abusive behavior towards detainees and arrestees;

(9). defendants failed to adequately train and educate officers in the use of reasonable and proper force.

(10). defendants failed to adequately supervise the actions of police officers under their control and supervision;

(11). defendants condoned and participated in the practice of reducing or dismissing criminal charges against individuals in return for their releasing from civil liability offending police officers; and

(12). defendants fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which, by November 19, 1983, represented the policy, practice, custom and procedure of the Fayetteville City Police Department.

Plaintiff alleges that the direct and proximate result of defendants' pattern of conduct, described above, was Officer McDaniel's assault on November 19, 1983, resulting in plaintiff's serious and permanent bodily injury and disfigurement. Defendants have answered, emphatically denying all substantive allegations.

The court will now proceed to consider *ad seriatim* all the contentions and motions heretofore summarized.

### (1). PLAINTIFF'S MOTION TO AMEND

Plaintiff has moved the court to amend his complaint to add the words "the defendant, City of Fayetteville, North Carolina" to paragraph XIV of the complaint. The effect of this amendment is to charge the City, along with its previously named representatives, with certain activities which are alleged to have resulted in the creation of an official city policy, custom and practice. Only defendant McDaniel consents to the amendment.

The second sentence of Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, as in this case, a party may amend his pleading only by obtaining leave of the court or by consent of the adverse party. The general policy of Rule 15 encourages the court to look favorably on requests to amend. It states that "leave shall be fully given when justice so requires."

Since the function of Rule 15(a) is to enable a party to assert matters that were overlooked or unknown to him at the time he filed his original complaint, leave to

amend should be freely granted in the absence of any undue delay, bad faith or dilatory motive. *Foreman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2nd Cir.1968).

Plaintiff simply seeks to correct an inadvertent omission in Paragraph XIV of the complaint. The motion to amend comes at a very early state of the proceedings. Defendants do not contend undue delay, bad faith or dilatory motive exists on the part of the plaintiff.

■ Defendants do opine that the amendment would cause them substantial prejudice, however, they are unable to articulate any factual basis to support the conclusory claim of prejudice. The City of Fayetteville is a named defendant and clearly on notice of the allegations contained in plaintiff's complaint. The City is listed in virtually every substantive paragraph in the twenty paragraph complaint. The court finds the City of Fayetteville will not be prejudiced by plaintiff's amendment to paragraph XIV. Therefore, plaintiff's motion to amend is ALLOWED and counsel for plaintiff has five (5) days from the date of service of this order in which to file plaintiff's amended complaint with the court.

### (2). DEFENDANT McDANIEL'S MOTION TO DISMISS

DEFENDANT McDaniel has moved the court to dismiss this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Defendant argues (1) lack of jurisdiction over the person; (2) lack of jurisdiction over the subject matter; (3) plaintiff's complaint is conclusory and lacks sufficient factual allegations to support a claim for relief; and (4) plaintiff has stated no claim cognizable under § 1983.

Defendant's 12(b)(1) motion alleging lack of in personam jurisdiction is DENIED, as it is apparent on the face of the pleadings that both the controversy and the defendant have sufficient contacts with this forum to give the court the right to exercise judicial power over defendant McDaniel.

Defendant's 12(b)(2) motion alleging lack of subject matter jurisdiction is also DENIED, as 28 U.S.C. § 1331 and § 1343 have long been recognized as the jurisdictional counterparts to 42 U.S.C. § 1983 actions brought under the Constitution. In addition, defendant's motion to dismiss alleging that plaintiff's complaint is conclusory is wholly without merit and is DENIED. Plaintiff's complaint is replete with factual allegations supporting well-articulated legal theories and certainly is sufficient under Rule 8(a) of the Federal Rules of Civil Procedure.

By contrast, however, defendant's 12(b)(6) motion to dismiss raises numerous complex and intricate questions of law with which this court has struggled before reaching its final decision. Officer McDaniel asserts that the factual allegations in the complaint state no claim of deprivation under the Fourth, Eighth and Fourteenth Amendments. Defendant further contends that the allegations at best amount to mere tortious conduct for assault and battery, which form an insufficient predicate for a § 1983 suit. Finally, McDaniel implicitly argues that in light of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Spell has shown no actionable constitutional violation under § 1983. The issues raised in this motion admit of no easy solution.

■ The court is very aware of its special role in applying the law as established by Congress, the Supreme Court and the Courts of Appeals. Its duty and obligation is to attempt to clearly perceive what the law is at any particular moment on a specific issue, and once clearly perceived, to honestly, fairly and forthrightly apply that law irrespective of its own view of whether the law is correct or incorrect. Federal district courts simply do not have the right to disregard the pronouncements of the Courts of Appeals for the circuits in which they sit, nor the unambiguous pronouncements of the Supreme Court. It is general-

ly not the duty of this court to make law, rather it is to follow the law.

■■■ However, given the confusion that exists at all levels of the law governing § 1983 actions, neither trial judges nor lawyers are given any simple or *per se* rules to follow in deciding whether a set of facts states an *actionable* constitutional deprivation under 42 U.S.C. § 1983. As a means of deciding this case and other similar cases, this court must create, and hereby establishes, a comprehensive analytical framework for making the required differentiation between common-law torts and *cognizable* constitutional deprivations. After a careful review of the case law and consideration of the problem, the court will now apply what it perceives to be the law to the facts of this case.[1]

■■■ To prevail in a civil rights action under § 1983, a plaintiff must establish two elements: (1) that the defendant deprived him of a right secured by the Constitution or laws of the United States and (2) that such deprivation was committed by a person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). There is no issue in this litigation regarding the second element—any deprivation that occurred was committed by defendants acting under color of state law.

The initial focus of the court's inquiry is whether plaintiff has been deprived of any right secured by the Constitution and laws of the United States. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). The court begins its analysis with some observations about § 1983. Originally enacted as § 1 of the Civil Rights Act of 1871, § 1983 declares

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The legislative history reveals that § 1983 was modeled on § 2 of the Civil Rights Act of 1866 and was enacted for the express purpose of enforcing the provisions of the Fourteenth Amendment. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Congress sought to protect constitutional rights and wipe out Ku Klux Klan violence in the southern states. The extensive and emotional debates in Congress waxed eloquent on the failure to protect individuals' civil rights. *Webster v. City of Houston,* 689 F.2d 1220 (5th Cir.1982). Representative Perry cried "Sheriffs, having eyes to see, see not; judges having ears to hear, hear not..." Cong.Globe, 42d Cong.; 1st Sess. 447 (1871). And Representative Hoar focusing on the purpose of the legislation stated:

The question is not whether a majority of the people in a majority of the States are likely to be attached to and able to secure their own liberties. The question is not whether the majority of the people in every State are not likely to desire to secure their own rights. It is, whether a majority of the people in every State are sure to be so attached to the principles of civil freedom and civil justice as to be as much desirous of preserving the liberties of others as their own, as to insure that under no temptation of party spirit, under no political excitement, under no jealousy of race or caste, will the majority either in numbers or strength in any State seek to deprive the remainder of the population of their civil rights."

---

1. It is well established that a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it affirmatively appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In the context of a motion to dismiss, the court must accept as true all well-pleaded factual allegations and reasonable inferences therefrom. The function of a motion to dismiss under Rule 12(b)(6) is to test the law of a claim and not the facts which support the claim.

*Id.* at 334–35, quoted in *Monroe v. Pape,* 365 U.S. at 182, 81 S.Ct. at 481.

The legislation was more than simply remedial. It was a sweeping measure designed to combat widespread deprivation of constitutional rights and state-sanctioned violence. Section 1 of the Act, was aimed at redressing "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). In both Houses, statements of the supporters of § 1 provide clear evidence of the Congressional intent to enact § 1 as a broad remedy for the violations of federally protected civil rights. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Section 1 of the Act was meant to provide, and unquestionably as codified in 42 U.S.C. § 1983 does provide, the means for enforcing substantive constitutional rights in federal court.

■ However, § 1983 imposes liability solely for violations of rights protected by the Constitution and federal law, not for violations arising simply out of state tort law principles. While § 1983 claims may frequently constitute "a species of tort liability," *Imbler v. Pachtman.* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), the court has warned that § 1983 is not "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Section 1983 does not automatically convert potential tort liability under state law into tort liability under federal law whenever the alleged tortfeasor is the state. Just as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 285, assault and battery do not become violations of the Fourteenth Amendment merely because the defendant

is a city police officer. *See, e.g., Baker v. McCollan,* ("false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official"); *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) ("not every injury in which a state official has played some part is actionable under [§ 1983]"); *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980) (not every violation of state tort and criminal assault laws is a violation of substantive due process).

■ Thus, while some conduct may clearly violate state tort law, it may not rise to the dimensions of constitutional injury. The proper remedy in those instances is a suit in state court under traditional tort principles. *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321 (11th Cir. 1982). The issue facing this court is whether plaintiff's allegations of tortious conduct result from "the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution." *Turpin v. Mailet,* 579 F.2d 152, 169 (2nd Cir.1978) (concurring opinion), *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978), quoting Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922 (1976). *See also Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980); *Hull v. City of Duncanville,* 678 F.2d 582 (5th Cir.1982); *Daniels v. Twin Oaks Nursing Home.* In essence, the question simply stated is whether defendants' conduct was sufficiently egregious so as to be "constitutionally" tortious. *Williams v. Kelley,* 624 F.2d at 697; *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981); *Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177 (M.D.Tenn.1982).

Section 1983 actions premised upon deprivations of a constitutional right fall into two distinct categories. First, there are actions predicated on violations of specific provisions of the Bill of Rights and other substantive guarantees, cognizable by virtue of the particular amendment's incorpo-

ration into the Fourteenth Amendment. *See, e.g., Estelle v. Gamble* (Eighth Amendment—cruel and unusual punishment); *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (Sixth Amendment—interference with attorney-client privilege); *Duncan v. Nelson*, 466 F.2d 939 (7th Cir.1972) (Fifth Amendment—coerced confession); *Monroe v. Pape* (Fourth Amendment—unreasonable search and seizure); *Egan v. City of Aurora*, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961) (per curiam) (First Amendment—deprivation of speech and assembly).

In addition, the due process clause creates certain substantive rights not explicit in the Bill of Rights. *See Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973) (right of privacy); *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) (right of privacy); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel). Of critical import in this case are the penumbras surrounding the Fourth and Eighth Amendments which give rise to the right of physical integrity for pretrial detainees. *See King v. Blankenship*, 636 F.2d 70 (4th Cir.1980); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978), *cert. denied sub nom. Moffitt v. Loe*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980); *Bellows v. Dainack*, 555 F.2d 1105 (2nd Cir.1977). All of these implicit and fundamental rights are centered in the nebulous Fourteenth Amendment concept of substantive due process.

The second category of constitutional case is the pure procedural due process claim. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Plaintiff in this type of action alleges a violation of due process but not based on any substantive constitutional provision. *See Barnier v. Szentmiklosi*, 565 F.Supp. 869 (E.D.Mich.1983).

In the case at bar, Spell asserts defendants' tortious conduct rises to constitutional significance and is therefore cognizable under § 1983 on four independent *substantive* grounds: (1) the right to be free from the infliction of cruel and unusual punishment as secured by the Eighth Amendment; (2) the right of physical integrity, to be free from unlawful detention and to be properly cared for and treated as secured by the substantive due process provisions of the Fourteenth Amendment; (3) the right to be secure against unreasonable seizures as secured by the Fourth Amendment; and (4) the privilege and immunity to be free from unlawful assault and injury by state officials as guaranteed by the Fourteenth Amendment.

Turning first to plaintiff's Eighth Amendment claim, the court finds that there is no basis for a pure Eighth Amendment claim. The Eighth Amendment does not apply directly because Spell was not serving a sentence of any kind at the time he was assaulted by McDaniel. *Henderson v. Counts*, 544 F.Supp. 149 (E.D.Va.1982). Spell's status was clearly that of a pretrial detainee and arrestee. The Constitutional prohibition against cruel and unusual punishment applies only to persons convicted of criminal offenses. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). It limits the kind of punishment which may be imposed upon conviction, *See, e.g., Estelle v. Gamble*, prohibits punishment disproportionate to the severity of the offense, *See, e.g., Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and places substantive limitations on what acts may be punished under the criminal law, *See, e.g., Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Therefore, to the extent plaintiff's complaint is premised on an Eighth Amendment claim, that claim is hereby DISMISSED.[2] *See*

---

**2.** The court does not find that the Fourth Circuit's recent opinion in *Slaken v. Porter*, 737 F.2d 368 (4th Cir.1984), mandates a different result as *Slaken* is limited to cases involving the unjustified striking or beating of a convicted prisoner.

*Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973); *Barrier v. Szentmiklosi,* 565 F.Supp. at 871.

■ In this case, plaintiff also relies and properly relies on a substantive due process right to physical integrity. Due process requires that a pre-trial detainee not be punished. *Bell v. Wolfish,* 441 U.S. at 535, n. 16, 99 S.Ct. at 1872. Numerous § 1983 suits have been maintained based upon injury inflicted by police beatings and shootings under the "liberty" provision of the Fourteenth Amendment due process clause. *See, e.g., Shillingford v. Holmes; Bellows v. Dainack; Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979); *Cook v. City of Miami,* 464 F.Supp. 737 (S.D.Fla.1979); *Culp v. Devlin,* 437 F.Supp. 20 (E.D.Pa.1977). The right to be free of state-occasioned violence and injury to one's bodily integrity is protected under the Constitution by the substantive guarantees of due process.

The Fourth Circuit has specifically recognized this theory of recovery in § 1983 police assault cases. In *Mishoe v. Collins,* 729 F.2d 1453 (4th Cir.1984), the court stated,

> ... the due process guarantees of the Fourteenth Amendment include protection from punishment for crime until after conviction by a court of law. Thus, if police act in excess of their lawful authority and beat or inflict corporal injury upon suspects by way of punishment for supposed offenses, their actions are in contravention of due process of law. *Screws v. U.S.,* 325 U.S. 91 [65 S.Ct. 1031, 89 L.Ed. 1495] (1945); *Williams v. U.S.,* 341 U.S. 97 [71 S.Ct. 576, 95 L.Ed. 774] (1951). These rights of individuals secured by the Constitution are protected by the remedy of 42 U.S.C. § 1983. Slip op. at 5–6.

*See also King v. Blankenship,* 636 F.2d 70 (4th Cir.1980) ("[l]est there be any doubt as to the rule in this circuit, we specifically hold that the unjustified striking, beating, or infliction of bodily harm upon a prisoner gives rise to liability under 42 U.S.C. § 1983 on the part of one, who acting un-der color of state law, engages in such conduct without just cause."); *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir.1970).

■ However, in order for liability to attach, the police officer's actions must cross over an ill-defined, but nonetheless very real, threshold which separates state torts from deprivations of constitutionally protected rights. As this court previously stated defendants' conduct must be sufficiently egregious so as to be considered "constitutionally" tortious. Not every push or shove violates the Constitution. In *King v. Blankenship,* the Court of Appeals emphasized that "not every instance of the use of excessive force gives rise to a cause of action under § 1983 merely because it gives rise to a cause of action under state tort law... The key phrases [are] 'unjustified striking, etc.' and 'without just cause' ..." 636 F.2d at 73.

In determining whether a state officer has pierced the constitutional boundary thereby making his abusive conduct actionable under § 1983, *King* directs the district courts to apply the factors set forth in *Johnson v. Glick,* 481 F.2d at 1083, on a case-by-case basis. *Id; See also Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980). *Johnson* articulately identifies the following factors which must be considered:

1. the need for application of force;
2. relationship between the need and the amount of force used;
3. extent of the injury inflicted; and
4. whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033. If, on balance, the use of force was unreasonable, excessive and unjustified, liability under § 1983 attaches. By the same token, if after balancing the above factors, the use of force was reasonable and justified, although defendants may nonetheless still be liable under state tort law to plaintiff, no § 1983 liability attaches.

■ Applying this standard to the case at bar *and taking as true plaintiff's allegations and all reasonable inferences therefrom,* this court is convinced plaintiff has stated a valid § 1983 claim for violation of his substantive due process rights. In this case, the assault by the officer was unprovoked and unjustified. Plaintiff was in custody at the LEC for relatively minor offenses. Spell had been arrested, brought to the LEC by McDaniel, given a Breathalyzer examination—all without indicent. Nothing in the record suggests plaintiff struck McDaniel or was trying to escape. The injury to plaintiff was severe and permanent. Should plaintiff prove his allegations, the physical abuse inflicted in this case would be so disproportionate, malicious and sadistic that it would, quite literally, shock the conscience of the court. Decency, security and liberty alike demand that such a tragic misuse of authority transcend the bounds of state tort law and clearly establish a deprivation of constitutional rights. To the extent defendant's motion to dismiss contends plaintiff fails to state a claim for relief premised on substantive due process grounds, defendant's motion is DENIED.

■ Plaintiff further alleges that the Fourth Amendment right to be free from unlawful seizures is applicable to the facts of this case. The court agrees. The Fourth Amendment protection against unreasonable searches and seizures, made applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has been held by the Fourth Circuit to prohibit the use of excessive, arbitrary and unreasonable force by police in making an arrest and processing the arrestee. *Jenkins v. Averett,* 424 F.2d at 1231–32; *Mishoe v. Collins,* Slip. Op. at 5. *See also Shillingford v. Holmes,* 634 F.2d at 265; *Begg v. Moffitt,* 555 F.Supp. 1344, 1357 (N.D.Ill.1983).

Applying, once again, the *Johnson v. Glick* factors to determine if McDaniel's use of force in processing plaintiff was excessive, arbitrary and unreasonable, the court concludes plaintiff has stated a valid § 1983 claim predicated on a violation of his Fourth Amendment rights. To the extent defendant's motion to dismiss contends plaintiff fails to state a claim for relief on this basis, defendant's motion is DENIED.

■ Finally, plaintiff argues that the privileges and immunities clause of the Fourteenth Amendment provides an additional constitutional basis upon which to hinge his § 1983 action. The privileges and immunities clause is strictly limited to rights of national as distinct from state citizenship. *See Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Slaughter-House Cases,* 83 U.S. (16 Wall) 36, 21 L.Ed. 394 (1872). It provides extremely limited protection of individual liberties. The court has found no 1983 case specifically predicated upon a violation of the privileges and immunities clause and therefore holds that it is inapplicable to this action. *See Dandridge v. City of Richmond,* 566 F.Supp. 152 (E.D.Va.1983). To the extent plaintiff's complaint is premised on a violation of the privileges and immunities clause, that claim is hereby DISMISSED.

Having concluded that plaintiff's complaint properly states a claim for deprivation of certain constitutional rights, the question becomes whether that deprivation is actionable under § 1983. The determination of this issue focuses on the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980). Defendant argues that *Parratt* precludes this suit because North Carolina provides an adequate post deprivation remedy.

The plaintiff in *Parratt,* a state inmate, alleged that he was deprived of property without due process of law when prison officials negligently lost in the prison mail system a hobby kit plaintiff had ordered. The Supreme Court, in an opinion written by Justice Rehnquist, agreed that plaintiff had been deprived of his property within the meaning of the Fourteenth Amendment. *Id.* at 536–37, 101 S.Ct. at 1913–14. However, the court held that random negli-

gent loss of the inmate's property did not constitute a due process violation where the state provided an adequate post-deprivation remedy. *Id.* at 540–41, 101 S.Ct. at 1915–16.[3] Thus, even though plaintiff had suffered a constitutional deprivation by an official acting under color of state law, the Nebraska post-deprivation tort remedy provided all the due process to which plaintiff was entitled. Therefore, plaintiff's claim under § 1983 was not actionable.

Defendant McDaniel asserts the rationale of *Parratt* applies with equal force to the facts of this case and mandates the dismissal of the action because Spell has a North Carolina State tort remedy. Defendant's argument, on its face, has merit and requires extensive analysis.

Lower federal courts attempting to analyze *Parratt* and apply its reasoning to a myriad of § 1983 fact situations have based their analyses on one or more of four sets of distinctions: (1) negligent vs. intentional deprivations; (2) liberty vs. property interests; (3) procedural vs. substantive constitutional guarantees; and (4) random and unauthorized official acts vs. established procedure, policies and custom. *See Holmes v. Ward,* 566 F.Supp. 863, 864–65 (E.D.N.Y.1983).

*Parratt* dealt with a negligent loss of property. A number of lower courts have attempted to distinguish *Parratt* and limit its scope to only those actions involving negligent deprivations. *See, e.g., Madyun v. Thompson,* 657 F.2d 868, 873 (7th Cir. 1981); *Howse v. DeBerry Correctional Institute,* 537 F.Supp. at 1177; *Tarkowski v. Hoogasian,* 532 F.Supp. 791, 794–95 (N.D. Ill.1982); *Parker v. Rockefeller,* 521 F.Supp. 1013, 1016 (N.D.W.Va.1981). The case at bar involves allegations of intentional rather than negligent conduct and, thus, plaintiff would have this court similarly limit the scope of *Parratt.* However, the court declines to do so for three reasons.

First, nothing in *Parratt* suggests that its holding is limited to negligent deprivations. Once it is assumed a random negligent act can be remedied by an adequate post-deprivation procedure, then the same type of procedure can just as easily remedy a random intentional act. *Holmes v. Ward,* 566 F.Supp. at 863. *Irshad v. Spann,* 543 F.Supp. 922 n. 1 (E.D.Va.1982).

Second, to limit *Parratt's* reasoning to negligent deprivations ignores the citation in *Parratt* to *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *Ingraham* dealt with corporal punishment in public schools and held that an intentional liberty deprivation such as paddling did not violate the Fourteenth Amendment because state tort remedies were sufficient to satisfy procedural due process. *Id.* at 679, 97 S.Ct. at 1416.

Finally, even if the court found itself in agreement with the distinction, it is bound by the Fourth Circuit's decision in *Palmer v. Hudson,* 697 F.2d 1220 (1983), *cert. granted,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983), which held *Parratt* applicable to intentional deprivations. *See also Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983); *Engblom v. Carey,* 677 F.2d 957 (2d Cir.1982); *Gilday v. Boone,* 657 F.2d 1 (1st Cir.1981); *Thurman v. Rose,* 575 F.Supp. 1488 (N.D.Ind.1983); *Sheppard v. Moore,* 514 F.Supp. 1372 (M.D.N.C. 1981).

Other courts have focused on the difference between property and liberty interests in determining whether state tort remedies provide constitutionally adequate procedure. A number of these courts have held that a case involving liberty interests is "of a wholly different nature than one involving property interests and have refused to apply *Parratt* to the former. *Wakinekona v. Olim,* 664 F.2d 708, 715 (9th Cir.1981), *rev'd on other grounds,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *See, e.g., Richardson v. Fleming,* 651 F.2d 366, 372

---

**3.** The State of Nebraska, where Taylor was incarcerated, provided a tort remedy to persons who suffered property losses at the hands of the state, *See* Neb.Rev.Stat. § 81–8, 209 *et seq.*

(1976), similar to provisions of the North Carolina State Tort Claims Act, N.C.Gen.Stat. § 143–291 *et seq.*

n. 10 (5th Cir.1981); *Moorhead v. Government of Virgin Islands,* 556 F.Supp. 174 (D.V.I.1983); *Schiller v. Strangis,* 540 F.Supp. 605, 615 (D.Mass.1982); *Scott v. Donovan,* 539 F.Supp. 255 (N.D.Ga.1982). To some degree this court finds itself in agreement with this distinction. Deprivations of liberty are more repugnant, less readily compensable (if at all), and generally carry more severe consequences for the victim than deprivations of property.

In addition this view finds support in Justice Blackmun's concurring opinion in *Parratt* where he stated he did "not read the Court's opinion as applicable to a case concerning deprivation of life or liberty." 451 U.S. at 545, 101 S.Ct. at 1917.

The court agrees that property deprivations are qualitatively different from deprivations of liberty. Taylor can adequately and easily be compensated for the loss of his hobby kit; it is doubtful victims of police beatings and shootings can ever be adequately compensated for their loss. As Judge Wiseman has stated in *Howse v. DeBerry,*

> To hold that an individual cannot bring suit under Section 1983 when he has been intentionally deprived of a clearly protected liberty interest—the right to be safe in his person from physical harm—by one acting "under color of state law," would be to ignore the very purpose of Section 1983 itself ... [it] would render Section 1983 meaningless in innumerable cases, for many of our most cherished liberties are analogous to rights for which the states provide remedies of some tort.

537 F.Supp. at 1181.

However, the court is not entirely comfortable with basing this opinion on what is essentially an emotional argument. There is no logical reason to distinguish between "property and liberty" for purposes of determining whether the state has provided due process, *see Barnier v. Szentmiklosi,* 565 F.Supp. at 877, and further, the citation in *Parratt* to *Ingraham* gives implicit recognition to the extension of *Parratt* to deprivations of liberty. *See Engblom v.*

*Carey,* 677 F.2d 957 at 964–66 (2d Cir. 1982); *Rutledge v. Arizona Board of Regents,* 660 F.2d at 1352 (9th Cir.1981); *Holmes v. Ward,* 566 F.Supp. at 865; *Eberle v. Baumfalk,* 524 F.Supp. 515 (N.D. Ill.1981); *Meshkov v. Abington Township,* 517 F.Supp. 1280, 1285–86 (E.D.Pa.1981).

The more proper and legally sound distinction is that premised upon the difference between procedural and substantive constitutional guarantees. It is important to recognize that *Parratt* concerned procedural due process rather than substantive due process. No cognizable claim under § 1983 was alleged because Nebraska, by providing an adequate post-deprivation remedy satisfied the requirements of procedural due process. Plaintiff's claim in *Parratt* did not implicate any of the substantive constitutional guarantees made applicable to the states by the Fourteenth Amendment. *Wolf-Lillie v. Sonquist,* 699 F.2d at 871. Thus, once the Supreme Court in *Parratt* found state procedures adequate to satisfy the requirements of due process, the constitutional basis for the § 1983 allegation was eliminated.

In *Parratt* the court itself distinguished between these claims involving specific substantive constitutional guarantees and those involving solely "the Due Process Clause of the Fourteenth Amendment *simpliciter.*" 451 U.S. at 536, 101 S.Ct. at 1913. A finding that state action violated an independent substantive right secured by the Constitution is qualitatively different from a finding that such action simply deprived a citizen of his right to procedural due process. *Owen v. Lash,* 682 F.2d 648, 651 (7th Cir.1982). In cases such as the one at bar, where the right asserted does not depend on the procedural protections accorded the plaintiff, but rather stems from a separate substantive constitutional guarantee, the availability of a post-deprivation hearing is of no consequence, since the constitutional violation exists independent of any procedures available to redress the deprivation. *Begg v. Moffitt,* 555 F.Supp. at 1362. The Constitutional viola-

tion is complete at the time of the deprivation and no procedure can alter that fact.

█ Unlike procedural due process which permits the deprivation of life, liberty or property when such deprivation comports with due process of law, substantive due process imposes absolute limits on state action regardless of the process provided. As Justice Blackmun observed in his concurring opinion in *Parratt,* "there are certain governmental actions that even if undertaken with a full panoply of procedural protection are, in and of themselves, antithetical to fundamental notions of due process" 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring). *See generally,* Wells & Eaton, *Substantive Due Process and the Scope of Constitutional Torts,* 18 GA.L.REV. 201 (1984).

█ This court agrees with the vast majority of courts which have considered the issue, and holds *Parratt* is not applicable to instances, such as the case at bar, where substantive guarantees of the Constitution are alleged to have been violated as opposed to alleged violations of procedural due process. *See, e.g., Wolf-Lillie v. Sonquist,* 699 F.2d at 872; *Brewer v. Blackwell,* 692 F.2d 387, 395 (5th Cir.1982); *Evans v. City of Chicago,* 689 F.2d 1286, 1298 (7th Cir.1982); *Duncan v. Poythress,* 657 F.2d 691, 704–05 (5th Cir.1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982); *Begg v. Moffitt,* 555 F.Supp. at 1362; *Irshad v. Spann,* 543 F.Supp. at 926; *Sager v. City of Woodland Park,* 543 F.Supp. 282 (D.Colo.1982); *Martin v. Covington,* 541 F.Supp. 803, 804 (E.D.Ky.1982); *Scott v. Donovan,* 539 F.Supp. at 258.

Finally, some courts have properly focused on the difference between random and unauthorized official acts and established state procedure, practice or custom. This distinction was critical to the *Parratt* decision, wherein the court stated:

> The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a

prisoner's property as a result of a random and unaothorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the state cannot predict precisely when the loss will occur. 451 U.S. at 541, 101 S.Ct. at 1916.

The court reemphasized this distinction in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Logan had charged his employer with unlawful discrimination under Illinois state law. Inadvertently, the Illinois Fair Employment Practices Commission failed to convene a timely fact-finding conference on plaintiff's charge as required by Illinois law. The Illinois Supreme Court held this action deprived the Commission of jurisdiction over plaintiff's charge and dismissed the action.

The Supreme Court reversed, holding that Logan's state law cause of action against his employer was "property" within the meaning of the due process clause and that he had been deprived of it. 455 U.S. at 428–33, 102 S.Ct. at 1153–56. The court further held the deprivation was without due process of law since Logan never got a hearing on the merits of his claim. It noted that *Parratt* involved a loss of property as a result of a random and unauthorized act rather than an established state procedure and stated:

> Here, in contrast, it is the state system itself that destroys a complainant's property interest, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness or otherwise ... Unlike the complainant in Parratt, Logan is challenging not the Commission's error, but the "established state procedure that destroys his entitlement ..." *Id.* at 436, 102 S.Ct. at 1158.

Assuming *arguendo,* that this court did not find a decisive distinction between substantive and procedural due process claims, the court would not bar claims where an established state procedure, practice or custom is itself the source of the deprivation. *See Begg v. Moffitt,* 555 F.Supp. at

1360–61. In a case closer to the facts of this action than *Logan, Pantoja v. City of Gonzales,* 538 F.Supp. 335 (N.D.Cal.1982), the police placed a drunk man in a holding cell, where he was found dead eight hours later. Plaintiffs, heirs of the man, sued attacking the city's practices and procedures for handling persons taken into custody under the state public intoxication law. Plaintiffs alleged the decedent was deprived of liberty without due process of law. The district court held *Parratt* was inapplicable because plaintiffs' claim was based not on a random or unauthorized act, but on established state procedure for the handling of persons taken into custody under the state law. *See also Holmes v. Ward,* 566 F.Supp. at 866 (attack on police procedure for insuring the separation of an inmate from a proven and deadly assailant).

Plaintiff, in the instant action, does not attack a random and unauthorized act, but a " 'de facto' policy of brutality which allegedly represents the official policy, custom, practice and procedure of the defendant City." *See* plaintiff's Response to Motions and Memorandum of Law, p. 3. Plaintiff's complaint, adequately supported by factual allegations, is, quite literally, a broadside attack on the basic investigative, training and supervision policies of the City of Fayetteville Police Department.

 Therefore, this court holds that *Parratt* does not bar a suit under 42 U.S.C. § 1983, despite the availability of state post-deprivation remedies, where the deprivation is unconstitutional irrespective of the procedural protections accompanying it offered by the state or where the deprivation is occasioned by state procedure, practice, policy or custom and not by a random or unauthorized act. Applying this standard to the case at bar, the court concludes plaintiff states a cognizable claim under § 1983 premised upon a deprivation of plaintiff's constitutional rights secured by the Fourth and Fourteenth Amendments.

Therefore, defendant McDaniel's motion to dismiss plaintiff's § 1983 cause of action is DENIED.

**(3). DEFENDANTS DALTON, HOLMAN, JOHNSON, DIXON, SMITH AND CITY OF FAYETTEVILLE'S MOTION TO DISMISS**

Based on the rationale previously articulated, that portion of defendants' motion predicated on the same grounds as defendant McDaniel's motion to dismiss is DENIED. However, defendants raise two additional arguments: (1) that neither the City nor the supervisory defendants are liable because they are sued solely on a *respondeat superior* basis; and (2) that the defendants are entitled to good faith immunity.

*A. Municipal Liability*

Municipal liability presents slightly different considerations from the liability of supervisory officials, although in this action the concepts tend to merge since the supervisory defendants are sued solely in their official capacity.[4] However, for purposes of this opinion, the court finds it useful to separate, at least initially, the discussion of these two concepts.

The essence of defendants' argument is that under 42 U.S.C. § 1983, a municipality cannot be held liable on a theory of *respondeat superior* for the unconstitutional acts of its employees. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants are correct, at least insofar as the argument is taken. In *Monell,* the court made it abundantly clear that liability may not be imposed under a *respondeat superior* theory, that is, merely because the city employs a tortfeasor. *Id.* at 691–92, 98 S.Ct. at 2036–37. *See also Polk Co. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981).

Instead, a municipality is liable only when "execution of a government's policy

---

4. The court is cognizant of the fact that plaintiff is not alleging all the named defendants, particularly Johnson, acted in a supervisory capacity; however, the court groups the named defendants (except McDaniel) in this manner for ease of discussion.

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694, 88 S.Ct. at 2037. Precise standards do not exist with respect to what acts constitute a policy or custom, but several broad guidelines have emerged from the plethora of lower court decisions interpreting *Monell. See, e.g. Languirand v. Hayden,* 717 F.2d 220 (5th Cir.1983); *Bowen v. Watkins,* 669 F.2d 979 (5th Cir.1982); *Turpin v. Mailet,* 619 F.2d 196 (2d Cir.1980), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Spriggs v. City of Chicago,* 523 F.Supp. 138 (N.D.Ill.1981).

■ First, at "some level of authority, there must be an official whose acts reflect governmental policy, for the government necessarily acts through its agents ... when an official has final authority in a matter involving the selection of goals or of means of achieving goals, his choices represent governmental policy." *Bowen v. Watkins,* 669 F.2d at 989. Clearly, officially promulgated ordinances, regulations and departmental directives give rise to municipal liability under § 1983 if such policies and decisions lead to the deprivation of constitutional rights.

■ Second, less than formal municipal conduct can also give rise to § 1983 municipal liability. *Turpin v. Mailet,* 619 F.2d at 200. Municipalities are equally liable for *de facto* policies or practices which engender constitutional deprivation. Informal actions, if they reflect a general policy, custom, practice or pattern of official conduct which even tacitly encourages conduct depriving individuals of their constitutional rights satisfies § 1983 standards. *Wolf-Lille v. Sonquist,* 699 F.2d at 870; *Webster v. City of Houston,* 689 F.2d at 1226. As the Second Circuit noted in *Turpin,* "[t]o require that senior officials must have formally adopted or promulgated a policy before their conduct may be treated as 'official' would for present purposes render *Monell* a nullity, exalting form over substance." 619 F.2d at 200; *See also Spriggs v. City of Chicago,* 523 F.Supp. at 141.

■ Third, an official policy can be inferred from a municipality's omissions as well as from its acts. *Wellington v. Daniels,* 717 F.2d 932, 935–36 (4th Cir.1983); *Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir.1981); *Turpin v. Mailet,* 619 F.2d at 202. However, in this circuit, such omissions are actionable only if they constitute "tacit authorization" of or "deliberate indifference" to constitutional injuries. *Wellington v. Daniels,* 717 F.2d at 935; *Avery v. County of Burke,* 660 F.2d at 114. Mere negligent inaction is insufficient. Municipal liability does not stem from a city's simple failure to exercise due care. The alleged breach of duty must be of greater magnitude.

■ The Fourth Circuit standard logically developed from the rule in the Second Circuit set forth in *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), which held that

> a mere failure by the [municipality] to supervise its employees would not be sufficient to hold it liable under § 1983. However, the [municipality] would be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights.

More specifically,

> where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the supervisor's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts."

*Turpin v. Mailet,* 619 F.2d at 201; *accord Spriggs v. City of Chicago,* 523 F.Supp. at 142; *Popow v. City of Margate,* 476 F.Supp. at 1237; *Leite v. City of Providence,* 463 F.Supp. 585, 590–1 (D.R.I.1978). Thus, tacit encouragement or repeated toleration of known constitutional deprivations upon the part of subordinate person-

nel can rise to the level of "policy or custom," thereby subjecting the municipality to liability under § 1983.

 Plaintiff's complaint alleges that is the custom and practice of the City, acting through certain of its agents, to deprive detainees, arrestees and others of their civil rights in the manner in which plaintiff's rights are alleged to have been violated. The complaint contends the custom or practice is evidenced by:

(1) repeated incidents of assault and abuse;

(2) repeated suits of the nature of this suit;

(3) repeated failure to educate and train police officers;

(4) repeated and deliberate failure to discipline known offenders among the police force;

(5) repeated and deliberate failure to investigate wrongdoing and violations of civil rights on the part of police officers even when the wrongdoing is blatant;

(6) repeated instances on the part of all defendants, either actively or passively, to cover up and absolve such wrongdoing on the part of police officers; and

(7) repeated failure to adequately supervise police officers.

Plaintiff also alleges the City encouraged misconduct by rewarding and commending abusive and assaultive behavior, by use of an arrest quota system, and by dismissing criminal charges against individual arrestees in return for their releasing the offending officers from civil liability. Plaintiff alleges the City's custom or practice has created an atmosphere of lawlessness and a pervasive pattern of misconduct. Finally and critically, plaintiff unambiguously asserts that this municipal custom and policy was a direct and proximate cause of the alleged harm. On the basis of these allegations, this court finds that the City of Fayetteville is not being sued on the basis of *respondeat superior.* *See Trotter v. City of Chicago,* 573 F.Supp. 1269 (N.D.Ill.

1983); *Cook v. City of Miami,* 464 F.Supp. 737 (1979); *Leite v. City of Providence,* 463 F.Supp. at 588.

Plaintiff is not alleging an official formal policy has been enacted, rather plaintiff clearly alleges a pattern or practice of conduct—action as well as inaction—on the part of those in senior departmental and city policy making roles. With regard to the accusations of repeated inaction, plaintiff's allegations are sufficient in that they assert the City's failure to respond to past instances of police misconduct evidences not merely negligence on the part of the City, but, at the very least, reckless and, perhaps, callous disregard of the rights of citizens to be free from the type of injury suffered by plaintiff.

Therefore, the court concludes plaintiff has stated a cognizable claim against the City of Fayetteville under § 1983. Defendants' motions to dismiss as to plaintiff's claim against the City is DENIED.[5]

### B. *Supervisory Liability*

As stated previously, the concepts of municipal liability and supervisory liability merge to a great degree in this action because the supervisory defendants are sued solely in their official capacity. Nonetheless, individual culpability is important because the City's liability is predicated upon the specific actions and omissions of its agents—the supervisory defendants.

 Defendants Dalton, Holman, Johnson, Dixon and Smith move to dismiss because they did not personally participate in the incident, i.e. no liability on the basis of the doctrine of *respondeat superior.* Defendants are correct that the doctrine cannot be used in § 1983 actions to hold superior officers liable who have no affirmative link with the misconduct. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). However, application of that principle of law to the facts *sub judice* does not compel the dismissal sought by defendants because plaintiff does not assert liability premised

---

**5.** This is not to imply that plaintiff's contentions will necessarily withstand an extremely well-documented motion for summary judgment.

The court simply finds that the complaint states a claim for relief sufficient to overcome the 12(b)(6) motion.

on that doctrine. Rather, plaintiff alleges defendants are *directly liable* through reckless and deliberate breach of their basic duties to properly train, supervise, investigate and discipline their subordinates. *McClelland v. Facteau,* 610 F.2d 693, 695 (10th Cir.1979).

As in *McClelland,* defendants argue that plaintiff's attempt to hold them liable is a disguised *respondeat superior* claim. The Tenth Circuit did not agree with that argument and neither does this court. Judge Logan articulately stated the controlling principles:

> A crucial difference exists between liability as a master (*respondeat superior*) and direct liability. *Respondeat superior* is a doctrine of vicarious liability based upon public policy—the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way ... Under direct liability, plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under § 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.

*Id.*

■■■ Personal participation is not a necessary prerequisite to imposing liability upon the supervisory defendants. *Avery v. County of Burke,* 660 F.2d at 114. The issue is whether defendants have done something or failed to do something which they ought to have done, thereby proximately causing a violation of plaintiff's constitutional rights. *Bowen v. Watkins,* 669 F.2d at 988–89; *Redmond v. Baxley,* 475 F.Supp. 1111, 1116 (E.D.Mich.1979). The requisite casual connection can be established not only by direct personal participation, but also by failure to perform an act which is legally required or by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitu-

tional injury." *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978). *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Thus, although supervisory officials cannot be held liable on the basis of their employer-employee relationship, liability attaches when their own action or inaction amounts to gross negligence or deliberate indifference and is the proximate cause of the constitutional violation. *Bowen v. Watkins,* 669 F.2d at 988; *Owens v. Haas,* 601 F.2d at 1246; *Redmond v. Baxley,* 475 F.Supp. at 1116; *Leite v. City of Providence,* 463 F.Supp. at 590.·

Plaintiff's complaint alleges defendants Holman, Dalton, Johnson, Dixon and Smith failed to control the behavior of subordinate employees, including McDaniel, thereby ratifying or tacitly authorizing the conduct and creating a *de facto* departmental policy.

■■■ First, as to allegations of failure to train and supervise, the law in this circuit is that such failure gives rise to § 1983 liability solely in those situations where there is a history of abuse. Only then may sufficient knowledge be imputed to the supervisory personnel. *Wellington v. Daniels,* 717 F.2d at 936; *See also Bowen v. Watkins,* 669 F.2d at 988–89; *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). However, the citizens of a municipality do not have to endure a widespread and prolonged pattern of past police misconduct before they can sue the city under § 1983. Liability occurs and recovery may be had for injuries resulting from an utter lack of training or grossly inadequate training of a police force, provided such is the "result of a deliberate and conscious indifference by the city." *Popow v. City of Margate,* 476 F.Supp. at 1246; *Leite v. City of Providence,* 463 F.Supp. at 590–91. Such a rule is consistent with the previously stated requirements of proof regarding municipal liability.

■■■ For purposes of guiding the lawyers in the future trial of this litigation,

this court specifically rejects any notion that a single act as isolated incident is sufficient to establish supervisory inaction and therefore liability. *Wellington v. Daniels,* 717 F.2d at 936; *Berry v. McLemore,* 670 F.2d 30 (5th Cir.1982); *Popow v. City of Margate,* 476 F.Supp. at 1246. *But See Owens v. Haas,* 601 F.2d at 1247.

■ Upon review of plaintiff's complaint, the court holds plaintiff has sufficiently alleged claims of a failure to supervise and train on the part of defendants Dalton, Holman, Dixon and Smith, so as to defeat defendants' 12(b)(6) motion.[6]

■ Second, regarding investigation of misconduct and discipline of officers, the rule is that where a city's procedure of reprimand is so inadequate or deliberately indifferent as to ratify unconstitutional conduct, the city may be liable under § 1983. *Turpin v. Mailet,* 619 F.2d at 201; *Brandon v. Allen,* 516 F.Supp. 1355, 1360 (W.D.Tenn.1981); *Popow v. City of Margate,* 476 F.Supp. at 1246; *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136 (D.Conn. 1978). A police chief or his lieutenant's persistent or deliberate failure to discipline subordinates in the face of knowledge of their propensity for improper use of force constitutes a *de facto* policy or official custom actionable under § 1983. *Sims v. Adams,* 537 F.2d 829 (5th Cir.1976); *Moon v. Winfield,* 383 F.Supp. 31 (N.D.Ill.1974).

■ Upon review of plaintiff's complaint, the court holds plaintiff has sufficiently alleged claims of a failure to investigate and discipline on the part of defendants Dalton, Holman, Johnson, Dixon and Smith, so as to defeat defendants' 12(b)(6) motion.[7]

Therefore, based on the aforesaid, the court concludes plaintiff has stated a cognizable claim against the supervisory defendants under § 1983. Defendants' motion to dismiss as to plaintiff's claims against defendants Holman, Dalton, Johnson, Dixon and Smith is DENIED.

### C. *Good Faith Immunity*

Defendants' final contention is that they are entitled to qualified good faith immunity pursuant to *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court disagrees.

In *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court unequivocally held that a good faith immunity defense is not available to municipalities in a § 1983 suit. The court found its conclusion compelled both by the legislative purpose in enacting § 1 of the Civil Rights Act and by strong considerations of public policy. *Id.* at 650; 100 S.Ct. at 1415.

■ Additionally, because an official capacity suit, such as the instant case, merely represents another form of claim against the municipality itself, the *Owen* holding denying a good faith immunity defense has been universally extended to official capacity suits. *Hughes v. Blankenship,* 672 F.2d 403 (4th Cir.1982); *Kincaid v. Rusk,* 670 F.2d 737 (7th Cir.1982); *Universal Amusement Co. v. Hofheinz,* 646 F.2d 996 (5th Cir.1981); *Key v. Rutherford,* 645 F.2d 880 (10th Cir.1981). Qualified good faith immunity insulates government officials only from liability in an individual capacity, but has no effect on liability in an official capacity, regardless of the benign intentions of the officers. *Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980).

■ Thus, defendants Dalton, Holman, Johnson, Dixon and Smith, sued in their official capacity, may not assert good faith immunity as a defense in this action. Defendant City of Fayetteville and the supervisory defendants' motion to dismiss on the basis of qualified immunity is DENIED.

---

**6.** The claims in the instant case that the supervisory and training practices were constitutionally defective may be difficult to prove. Such claims are rarely successful on the merits. *E.g., Orpiano v. Johnson,* 632 F.2d 1096 (4th Cir. 1980); *Turpin v. Mailet,* 619 F.2d at 201. However, it cannot now be determined whether plaintiffs will be able to produce sufficient evidence of knowledge, acquiescence or indifference so as to prevail on the merits.

**7.** Footnote 5 is equally applicable to these claims.

#### (4). DEFENDANTS HOLMAN AND JOHNSON'S MOTION FOR SUMMARY JUDGMENT

Defendants allege no new grounds in support of their motion for summary judgment. Three two-paragraph affidavits are attached to the motion stating, in conclusory terms, that neither defendant was in the chain of command nor had any supervisory responsibility for defendant McDaniel on November 19, 1983.

Defendants' motion for summary judgment is premised, as was their motion to dismiss, on an erroneous interpretation of plaintiff's complaint. Plaintiff is not alleging liability on the basis of *respondeat superior.* Spell alleges liability based on defendants' own actions and omissions as they relate to and form the basis of the custom, policy and practice of the municipality.

■ First, with regard to defendant Holman, plaintiff alleges in his verified complaint, upon which he may rely, that Holman indeed had general supervisory powers and responsibilities over individual police officers, including McDaniel. Liability is premised on Holman's failure to train, supervise and discipline McDaniel and others on the force under his command, thereby creating the conditions which proximately caused the constitutional deprivation at issue in this litigation. Genuine issues of material fact appearing in this sole issue raised by defendant Holman's motion, summary judgment is improper.

■ As to defendant Johnson, the fact that he is not in the chain of command or in a direct supervisory position over McDaniel is irrelevant. Defendant admits he was, in fact, in charge of Departmental Inspections as plaintiff alleged in his complaint. *See* affidavit of William C. Johnson, filed March 13, 1984. Liability is premised on Johnson's failure to investigate allegations of police misconduct and abuse, as his job required him to do, thereby creating the conditions which proximately caused plaintiff's injury. Again, genuine issues of material fact remaining, summary judgment is inappropriate. Therefore, defendants' motion for summary judgment is DENIED.

#### (5). PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

■ Plaintiff moves to strike paragraphs 2, 4, 6 and 7 of the defendant City and supervisory defendants' Affirmative Defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Plaintiff alleges they constitute insufficient defenses as a matter of law. Paragraphs 2, 4 and 6 contain defendants' assertion of their qualified good faith immunity defense. Paragraph 7 contains defendants Holman and Johnson's assertion of immunity because they were not in the chain of command over defendant McDaniel. Paragraph 7 further contains defendants Dalton, Dixon and Smith's assertion of absolute immunity on the basis that their actions were benign and discretionary. The court has previously addressed the merits of these contentions and denied motions to dismiss and for summary judgment predicated upon them. The issue now is whether to strike the defenses from defendants' Answer.

Under Rule 12(f) of the Federal Rules, the court may strike "from any pleading any insufficient defense." The striking of such defenses is a proper means of expediting legal proceedings. *See, e.g.; United States v. 416.81 Acres of Land,* 514 F.2d 627 (7th Cir.1975); *Klemens v. Air Line Pilots Association International,* 500 F.Supp. 735 (W.D.Wash.1980). A defense is insufficient "if it is clearly invalid as a matter of law." *Anchor Hocking Corp. v. Jacksonville Electric Authority,* 419 F.Supp. 992, 1000 (M.D.Fla.1976).

A motion to strike is a severe measure and it is generally viewed with disfavor, because it is difficult to establish that a defense is clearly insufficient. However, when such a showing is made, the court should grant a motion to strike "to avoid unnecessary time and money in litigating invalid, spurious issues." *Id., Johnson v.*

*American Airlines, Inc.,* 487 F.Supp. 1343 (N.D.Tex.1980).

Here, even accepting as true the facts alleged by defendants as the basis for their immunity defenses, defendants' Second, Fourth, Sixth and Seventh Affirmative Defenses are clearly insufficient as a matter of law. Accordingly, plaintiff's motion to strike is GRANTED and the Clerk of Court is DIRECTED to strike the Second, Fourth, Sixth and Seventh Affirmative Defenses from the copy of defendants' Answer, filed March 13, 1984.

### (6). DEFENDANT CITY OF FA-YETTEVILLE'S MOTION TO STRIKE PLAINTIFF'S PUNITIVE DAMAGES CLAIM

Defendant moves to strike paragraph (3) of the prayer for relief contained in plaintiff's complaint pursuant to F.R.Civ.P. 12(f). Paragraph (3) prays for punitive damages against the defendant City in the amount of $2,500,000.

██ The problem with defendant's motion is that Rule 12(f) only permits the striking of insufficient defenses or redundant, immaterial, impertinent or scandalous matter. Plaintiff's prayer for punitive damages falls within none of the above categories. A motion to strike is neither the authorized nor the proper way to procure the dismissal of part of a complaint. *See* 5 Wright and Miller, *Federal Practice & Procedure* § 1380 (1969).

However, since plaintiff has responded to defendant's motion, he can hardly be prejudiced by the court, *sua sponte,* treating defendant's inaccurately denominated motion to strike as a Rule 12(b)(6) motion to dismiss plaintiff's claim for punitive damages against the municipality.

██ Defendant argues that pursuant to the Supreme Court's recent pronouncement in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), punitive damages are not recoverable against a municipal defendant in a § 1983 action. The court agrees. *New-*

*port* is unequivocal and, contrary to plaintiff's argument, is not limited to its facts: In sweeping language, the court states:

> Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extensive conduct ... [A]n award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort ... Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon *the shoulders of blameless or unknowing taxpayers.*

*Id.* at 267–68, 101 S.Ct. at 2759. More specifically, the court held:

> In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials. Because absolute immunity from such damages obtained at common law and was undisturbed by the 42nd Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.

*Id.* at 271, 101 S.Ct. at 2762.

In accordance with Supreme Court dictate, defendant's motion to dismiss plaintiff's punitive damages claim against the City of Fayetteville is GRANTED.

### (7). PLAINTIFF'S MOTION TO COMPEL DISCOVERY [8]

On January 26, 1984, plaintiff served on defendants a Request for Production of Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. Plaintiff

---

**8.** Plaintiff's motion is directed to the supervi-

sory defendants and the City, not McDaniel.

requested thirteen categories of documents. With the exception of one item, defendants have refused to accede to plaintiff's request for discovery. Plaintiff, in accordance with the requirements of F.R. Civ.P. 34 and 37 moves this court for an order compelling discovery. In support of his motion, plaintiff has filed an extensive affidavit of counsel and memorandum of law. Defendant continues to object to the discovery and has filed a concomitant motion for a protective order. Defendants' objections are supported by a conclusory three page memorandum with no attached affidavit, thus making more difficult this court's task of deciding the complex issues presented. Plaintiff essentially seeks three types of information in his discovery request: (1) records of complaints, investigations and reports concerning the incident at bar and defendant McDaniel's conduct while a member of the Fayetteville Police Department[9]; (2) records of complaints filed, investigations conducted and reports written for internal and external use, allegations of abuse and unreasonable force within the Fayetteville Police Department since January 1, 1981[10]; and (3) regulations, directives, manuals, official administrative reports and other documents produced by or for the Police Department and used by it to communicate departmental policies or rules of law to officers regarding the use of force.[11]

Plaintiff asserts that the discovery he seeks is essential to the preparation of his case for trial and that the requests fall squarely within the scope of the discovery rules.

Defendants, on the other hand, have interposed a variety of objections to the discovery. Defendants argue the following grounds support their motion for a protective order: (1) irrelevance; (2) executive privilege (although it is not specifically delineated as such); (3) state statutory privilege under N.C.Gen.Stat. § 160A–168; (4) work product privilege; (5) attorney-client privilege; and (6) undue hardship. After a thorough review of plaintiff's motion, affidavit of counsel and memorandum of law and defendants' objections thereto, the court GRANTS plaintiff's motion to compel on the following basis with limited exceptions as detailed in a protective order issued at the conclusion of this discussion.

## A. Relevance

Defendants object to all of plaintiff's requests on the grounds that they are not relevant to the subject matter involved in the pending action as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.

Rules 26 through 37 of the Federal Rules have been interpreted liberally to allow maximum discovery. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It is clear that what is relevant in discovery is far different from what is relevant at trial, in that the concept at the discovery state is much broader. *See* C. Wright, *Law of Federal Courts* 403 (1976). Discovery is designed to define and clarify the issues. If requested materials are reasonably calculated to lead to discovery of admissible evidence, the discovery request is relevant. F.R.Civ.P. 26(b)(1); *Wedding-ton v. Consolidated Rail Corp.*, 101 F.R.D. 71, 73 (N.D.Ind.1984). *Alliance to End Repression v. Rockford*, 75 F.R.D. 441, 444 (N.D.Ill.1977). Therefore, discovery requests should be complied with if there is a reasonable possibility that the information sought may be relevant to the subject matter of the action. *Sherman Park Community Association v. Wauwatosa Realty*, 486 F.Supp. 838, 845 (E.D.Wis.1980).

Furthermore, the burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery. *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C.

---

9. Request Nos. 2, 7, 9 and 12 are included in this category.

10. Request Nos. 3, 4, 5, 6, 8, 10, 11 and 13 are included in this category.

11. Request No. 1 forms the basis of this category and the court finds defendant has substantially complied with this request.

1978); *Zucker v. Sable,* 72 F.R.D. 1, 3 (S.D.N.Y.1975). With this definition of relevance kept firmly in mind, the court will now address defendants' relevancy objections to the major categories of production requests.

First, with regard to defendants' objection to material directly related to this incident and to McDaniel, the court finds the objection of little merit. Information from investigations into the incident which forms the basis for this lawsuit and into the background of the allegedly culpable individual is by definition highly relevant to this lawsuit. *Wood v. Breier,* 54 F.R.D. 7 (E.D.Wis.1972). Items 2, 7, 9 and 12 are clearly relevant to show the propensity of McDaniel to repeatedly use excessive or unreasonable force. The items are also relevant to show the supervisory defendants knew or should have known of such propensity on McDaniel's part. *Dos Santos v. O'Neill,* 62 F.R.D. 448 (E.D.Pa.1974). Finally plaintiff argues the information contained in these requests will establish that previous allegations against McDaniel were presented to City officials prior to this incident and City officials refused to take adequate remedial steps. The court finds items 2, 7, 9, and 12 relevant and defendants' objection is OVERRULED.

Defendants' relevancy objection to material relating to all other incidents of misconduct and abuse since January 1, 1981, although requiring slightly more discussion, is also without merit. Plaintiff claims this information is relevant to demonstrate a repetitive pattern of violent behavior and unreasonable use of force by numerous Fayetteville police officers. In addition, plaintiff contends the information will show that the supervisory defendants knew or should have known of this pattern of assaultive behavior and failed to take reasonable steps to investigate and prevent it. The information is critical, plaintiff argues, if he is to have any chance of success on his claim of municipal liability. The court agrees.

Under § 1983, the extent of supervisors' knowledge of and participation in the acts of their subordinates determines the scope of their liability and *ipso facto* the municipality's liability. The essence of plaintiff's complaint is that the supervisory defendants were grossly negligent or deliberately indifferent in failing to provide adequate training, supervision and discipline to officers on the police force, including McDaniel. To prove this allegation, the court agrees with plaintiff that it would be high relevant, indeed critical, to establish what the defendants knew regarding allegations of police brutality and when they knew it. *See Culp v. Devlin,* 78 F.R.D. 136 (E.D.Pa. 1978); *Norton v. McKeon,* 444 F.Supp. 384 (E.D.Pa.1977). Neither plaintiff nor defendants suggest any other source for information which would shed light upon the supervisory defendants' possible knowledge and concomitant responsibility in this case.

The basic problem with defendants' objection is that it fundamentally disregards the theories underlying plaintiff's case. *Culp v. Devlin,* 78 F.R.D. at 141. Therefore, on relevancy grounds this court agrees with the vast majority of courts which have considered the issue and OVERRULES defendants' objections. *See, e.g., Mercy v. County of Suffolk,* 93 F.R.D. 520 (E.D.N.Y.1982); *Dykes v. Morris,* 85 F.R.D. 373 (N.D.Ill.1980); *Dos Santos v. O'Neill,* 62 F.R.D. at 451; *Crawford v. Dominic,* 469 F.Supp. 260 (E.D.Pa.1979); *Wood v. Breier,* 54 F.R.D. at 13.

### B. *Executive Privilege*

Executive privilege is the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest. *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 342 (E.D. Pa.1973). Defendants contend that the documents at issue in this case should be protected by executive privilege because disclosure of their contents would frustrate the public policy served by internal and municipal police investigations. Defendants argue, as have many municipal defendants in previous cases, that investigations of allegations of abuse are conducted under a veil of confidentiality and it would

impair the functioning of the police department if the results of such investigations were disclosed to the public. *See, e.g.; Dos Santos v. O'Neill,* 62 F.R.D. at 449; *Frankenhauser v. Rizzo,* 59 F.R.D. at 342. Defendants also claim the disclosure would chill the willingness of witnesses to give information during police investigations and would, therefore, "impede candid and conscientious self-evaluation of actions of the department." *Id.* Although formal objections on the grounds of executive privilege were not tendered by defendants, the court reasonably interprets defendants' relevancy arguments to contain such objections as to all plaintiff's requests.

Initially, the court notes that the party objecting to discovery on the basis of any privilege has the burden of establishing the existence of that privilege. *Robinson v. Magovern,* 83 F.R.D. 79, 85 (W.D.Pa.1979); *Reeg v. Fetzer,* 78 F.R.D. 34 (W.D.Okl.1976). Evidentiary privileges operate to exclude relevant information from the fact finder and thus are not favored. The Supreme Court in addressing the general issue of evidentiary privileges has stated: "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). The law will sustain a claim of privilege only when absolutely necessary to protect and preserve an interest of significant public importance that the asserted privilege is designed to serve. *United States v. Mandel,* 415 F.Supp. 1025 (D.Md.1976). As applied to this § 1983 action, the court holds a claim that relevant evidence is privileged "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Wood v. Breier,* 54 F.R.D. at 13; *Crawford v. Dominic,* 469 F.Supp. at 262.

Thus, courts which have been faced with the defense of executive privilege have recognized that it is not an absolute privilege. *See e.g.; Dos Santos v. O'Neill,* 62 F.R.D. at 449; *Wood v. Breier,* 54 F.R.D. at 11. It must be demonstrated on a case by case basis by performance of a balancing function. Only if the damage to the executive department or the public interest from disclosure significantly outweighs the harm to plaintiffs from nondisclosure will the privilege be upheld. *Id.*

The court's balancing function requires discussion of a number of competing factors. The fullest categorization of the factors to be considered in deciding what police files should be discoverable by a § 1983 plaintiff was made by Judge Becker in *Frankenhauser v. Rizzo.* Judge Becker stated:

> In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

59 F.R.D. at 344.

*Frankenhauser* has been widely followed. *See, e.g., Culp v. Devlin,* 78 F.R.D. 136 (E.D.Pa.1978); *Jabara v. Kel-*

*ley,* 75 F.R.D. 475 (E.D.Mich.1977); *Gaison v. Scott,* 59 F.R.D. 347 (D.Haw.1973); *Boyd v. Gullett,* 64 F.R.D. 169 (D.Md. 1974). Applying the criteria set forth in *Frankenhauser* to the case at bar, the court finds plaintiff has met the test outlined by Judge Becker and defendants' objections based on executive privilege are OVERRULED, with the exception of three instances delineated below.

First, this court does not believe that the infrequent instances of court-ordered disclosure made after considered application of a detailed balancing test would deter citizens from revealing information to the police. Neither does the court perceive any impact upon private citizens who openly and voluntarily gave statements surrounding an investigation of an allegation of police misconduct. *Frankenhauser v. Rizzo,* 59 F.R.D. at 344. The average citizen is generally willing to cooperate with law enforcement officials in this regard. In addition, the court will issue a protective order strictly limiting access to the information and documents produced to those members of the plaintiff's litigation team and experts employed by plaintiff's counsel.

However, the court does perceive a potential problem with information contained in police files from *confidential informants.* The public interest in preserving the anonymity of such persons, whose effectiveness and perhaps whose lives may be at risk, may justify the deletion of identifying information from the reports, files and documents sought in discovery, at least insofar as these documents relate to incidents other than the alleged assault on Spell and police officers other than defendant McDaniel. *Jabara v. Kelley,* 75 F.R.D. at 495; *Crawford v. Dominic,* 469 F.Supp. at 264. Therefore, the court will issue a protective order in this regard and will require an *in camera* inspection of documents within this category identified in *good faith* by counsel for defendants under the terms and conditions set forth at the conclusion of this discussion.[12]

With regard to the third factor, the court simply does not accept the proposition that fellow police officers are more likely to be untruthful if they know potential plaintiffs might receive their reports in later litigation. *Id.* at 264–65. The court recognizes the importance of police department self-evaluation and remedial action, but disclosure to plaintiff's counsel in a limited number of cases will not hinder internal review. On the contrary, limited disclosure should further this policy. As Judge Pratt has eloquently stated in *Mercy v. County of Suffolk:*

> These investigations are conducted, at taxpayer expense, to determine whether the procedures of the department or individual police officers were responsible for the complained-of incident, and whether disciplinary or other remedial action is necessary to prevent the recurrence of similar incidents. No legitimate purpose is served by conducting the investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to insure these investigations are carried out in an even-handed manner, that the statements are carefully and accurately taken, that that the true facts come to light..."

93 F.R.D. at 522.

As with relevance, a basic problem with defendants' objection on this basis is that it disregards a major premise of plaintiff's case. Plaintiff alleges this exact process of internal review was grossly inadequate. Defendant Johnson, and therefore the City, is specifically charged with being deliberately indifferent to citizen and fellow police officers' allegations of misconduct by failing to properly investigate such charges. Accusations of failure to discipline and active encouragement of assaultive behavior

---

**12.** The court notes and considers extremely important the fact defendants have not alleged the existence of any confidential informants in their motion or memorandum opposing production. The court, therefore, does not expect many documents to legitimately fall within this exception.

abound in plaintiff's complaint. In order for plaintiff to prove these allegations, he must have an opportunity to discover and review internal investigative files and reports. *See Dykes v. Morris,* 85 F.R.D. at 375–6 (N.D.Ill.1980); *Dos Santos v. O'Neill,* 62 F.R.D. at 451.[13]

Defendants also implicitly argue that some of the materials plaintiff seeks should be suppressed because they contain supervisory evaluations of the conduct of the officers involved. However, to apply a *per se* rule exempting supervisory evaluations from discovery would probably bar scrutiny of highly relevant evidence which cannot be adequately developed in any other way. *Crawford v. Dominic,* 469 F.Supp. at 265. In a § 1983 custom and practice case such as this, internal supervisory evaluations may be the best evidence available of the state of mind of defendant supervisors and of other agents of the municipality and police department responsible for personnel and policy decisions. *Id.* Such evaluations are clearly relevant to determining what the defendants knew and when they knew it.

For these reasons, the court is persuaded that supervisory evaluations should not be shielded or edited unless, as to each such assertedly privileged evaluation, defendants can make a strong showing that confidentiality is vital to the decision-making process of the municipality or would otherwise substantially harm the public interest. *Id., Boyd v. Gullett,* 64 F.R.D. at 178; *Dos Santos v. O'Neill,* 62 F.R.D. at 451. The court will issue a protective order in this regard and will require an *in camera* inspection of documents within this category identified in *good faith* by counsel for de-

fendants only insofar as the documents relate to incidents other than the one at bar and police officers other than defendant McDaniel (i.e. Request Nos. 3, 4, 5, 6, 8, 10, 11 and 13).[14]

As to factor five, plaintiff is not an actual or potential defendant in any pending criminal proceeding arising out of this case. Neither does it appear that any departmental disciplinary actions have been instituted against any defendant as a result of the events in question.

Further, defendants do not allege that any ongoing police investigation will be disrupted by disclosure. However, should defendants find this to be the case investigatory files relating to internal investigations currently in progress from incidents arising prior to January 26, 1984, may properly be withheld by defendants until such time as the investigation is completed. *Boyd v. Gullett,* 64 F.R.D. at 178; *Frankenhauser v. Rizzo,* 59 F.R.D. at 343.[15] At the conclusion of the investigation, which should be accomplished at this late date with prompt dispatch, defendants will have a continuing obligation to supplement plaintiff's production request with those documents as ordered by this court.

As to the final three factors of the *Frankenhauser* test, all clearly favor the plaintiff. Plaintiff's allegations are substantial and brought in good faith. The information requested is simply not available through other discovery or from other sources. Finally, the importance of the information sought is, by now, manifest and overriding. See *Crawford v. Dominic,* 469 F.Supp. at 263 (holding that the weightiest of the ten factors is the last: the importance of the information to the plain-

---

**13.** The court finds plaintiff's request for documents since January 1, 1981 reasonably limited in time and scope. However, the court hereby establishes a *forward cut-off date* of January 26, 1984, the date of plaintiff's complaint.

**14.** The court will impose strict conditions in the protective order on the manner in which the privilege may be asserted. The court does not expect every evaluation since 1981 nor a majority of them to be delivered to its doorstep. Counsel for defendants shall exercise this privi-

lege with great care and only in exceptional circumstances. An abuse of this right to *in camera* inspection will result in severe and immediate sanctions.

**15.** Defense counsel shall inform plaintiff of the nature of any documents withheld on this basis with sufficient particularity so as to enable plaintiff to file objections with this court should he deem the decision to withhold as taken in bad faith.

tiff's case); *Culp v. Devlin*, 78 F.R.D. at 139–41.

In conclusion, the court finds the scales tip decidedly in favor of the plaintiff and defendants' objections to disclosure on the grounds of executive privilege are OVER-RULED with the exception of those items previously discussed and further detailed in the protective order issued at the conclusion of the court's memorandum on plaintiff's motion to compel.

### C. *North Carolina Statutory Privilege*

██ Defendants' assertion that N.C. Gen.Stat. § 160A–168 prohibits disclosure of items 2–10 and 12 can be disposed of quickly. § 160A–168 deems confidential most information contained in a city employee's personnel file with certain exceptions.[16] One of the exceptions, 160A–168(c)(4), specifically allows disclosure of the entire file by order of a court of competent jurisdiction. This court has meticulously considered defendants' relevancy and executive privilege objections and found the documents requested generally discoverable. Defendants offer no additional justification for invoking the North Carolina privilege. Therefore, given that the statute itself confers authority on this court to order disclosure, the court, in its discretion, OVERRULES defendants' objection of statutory privilege.

██ In addition, the court notes that the North Carolina law of privileges is not decisive because the present action arises under federal law. In a non-diversity case, federal privilege law applies. *See* F.R. Evid. 501; *Flora v. Hamilton*, 81 F.R.D. at 578; *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D.Cal.1978). Under federal law, there is no privilege for police investigative files other than to files relating to ongoing investigations. *See Swanner v. United States*, 406 F.2d 716 (5th Cir.1969); *Alexander v. Rizzo*, 50

F.R.D. 374 (E.D.Pa.1970); *Capitol Vending Co. v. Baker*, 35 F.R.D. 510 (D.D.C. 1964). Therefore, on this basis as well defendants' state law objections are OVER-RULED.

### D. *Work-Product Privilege*

██ Defendants' next argument is that the material contained in items 2, 5, 6, 9, 10 and 13 fall within the work product privilege. The court is at a loss to see how this information can be classified as work product.

Item 2 requests complaints filed by civilians and fellow police officers against defendant McDaniel.[17] Item 5 requests records concerning disciplinary actions taken against police officers as a result of allegations of unreasonable force. Item 6 requests releases from liability signed by complainants. Item 9 requests records of any Internal Affairs investigations of defendant McDaniel and Item 10 requests similar information regarding all investigations conducted since January 1, 1981 by the Internal Affairs Division.

Rule 26(b)(3) of the Federal Rules of Civil Procedure contains the work product doctrine. It allows a party to "obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Defendants' assertion of the work-product privilege fails for three reasons.

First, the reports requested were, for the most part, prepared pursuant to the normal

---

**16.** The court has found no North Carolina decision interpreting the breadth and scope of this statute, although the court finds that whatever privilege may be asserted on the basis of the statute, it is not an evidentiary privilege. Such privileges are exclusively listed in N.C.Gen.Stat. § 8–53—§ 8–53.5.

**17.** Request Nos. 2 and 9 relate to documents concerning only defendant McDaniel. McDaniel has not filed any objection to the production of such documents.

police practices of conducting an internal investigation after a complaint is filed, *Mercy v. County of Suffolk*, 93 F.R.D. at 522. Investigations of this nature are routinely undertaken by police departments and are not conducted in anticipation of trial. *Frankenhauser v. Rizzo*, 59 F.R.D. at 342, n. 5. Defendants do not allege any specific document was prepared in anticipation of litigation and it was their burden to have so pled.[18] The mere possibility of litigation is insufficient to allow the documents Rule 26(b)(3) protection and to prevent disclosure.

Second, plaintiff alleges the materials are primarily factual accounts of the events at issue in this litigation. Defendants do not dispute this assertion. To the extent plaintiff is correct, facts are not protected by the work-product privilege. Moreover, defendants do not assert the materials contain any evidence of counsel's legal analysis, theories of the case, or anticipated strategy should litigation ensue. Therefore, this court has no alternative but to conclude that the reports and documents at issue were prepared in the ordinary course of business pursuant to the Internal Affairs Division's duty to investigate allegations of abuse, and as such are not shielded from discovery. *See e.g., Mercy v. County of Suffolk*, 93 F.R.D. at 522; *Diamond v. City of Mobile*, 86 F.R.D. 324, 328–29 (S.D. Ala.1978); *Dos Santos v. O'Neill*, 62 F.R.D. at 451.

Finally, and most importantly, the court holds that even if the documents are within the parameters of Rule 26(b)(3), plaintiff has clearly established "substantial need" for the information and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Therefore, defendants' objections premised upon the work-product privilege are OVERRULED.

### E. *Attorney-Client Privilege*

■ Defendants contend that the same documents they listed under work-product privilege would also violate the attorney-client privilege if disclosed. Defendants' conclusory assertion is without merit.

The investigative reports and certainly the complaints and releases of liability are "not part of the consultation process between lawyer and client or among representatives of the client designed to facilitate the rendition of legal services to the client." *Frankenhauser v. Rizzo*, 59 F.R.D. at 342, n. 4. Defendants simply have not alleged that at the time of these investigations, any of the participants had any communications with an attorney. In deciding this same issue and denying defendants' motion for a protective order, Judge Pratt stated in *Mercy v. County of Suffolk:*

> ... the underlying facts involved in these communications are not privileged, and a party cannot refuse to testify to facts merely because he later communicated them to his lawyer. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981). As to communication of these facts, such communications are protected by the privilege only when they are between attorneys and their clients ... The central purpose of internal affairs' investigation was to determine within the administrative procedures of the police department whether any disciplinary action should be taken against certain police officers... The "communications" in each instance were not between attorney and client, but between one police officer and another [or between a citizen and a police officer] who was carrying out an investigative function. None of the policies underlying the attorney-client privilege would be served by preventing disclosure here. Therefore, neither the individual police officers' reports nor the narrative

---

**18.** Defendants simply cannot rely on a conclusory allegation of work-product privilege without any attempt to justify the assertion.

report of the investigating officer falls within the attorney-client privilege.

93 F.R.D. at 522.

For the reasons cited by Judge Pratt, defendants' objections are OVERRULED.

### F. *Undue Hardship*

Defendants' final argument with respect to Items 3, 8, 10 and 12 is that to *provide copies* of the same would place upon them an undue burden and expense. Plaintiff agrees with defendant and in his response states that he will copy all of the requested documents and do so at his own expense. Therefore, defendants' argument is moot as they will incur no burden or expense whatsoever. On the basis of plaintiff's assertion, defendants' objection is OVER-RULED.

### ORDER

Based upon the foregoing, plaintiff's motion to compel the production of documents is GRANTED and defendants' motion for a protective order is GRANTED in part and DENIED in part upon the following terms and conditions:

1. Defendants shall, within ten (10) days of the date of service of this order, produce to the plaintiff for inspection and copying all materials and documents requested in Items 2, 7, 9 and 12 of plaintiff's Request for Production of Documents without exception.

2. Defendant shall, within twenty (20) days of the date of service of this order, produce to the plaintiff for inspection and copying all materials and documents requested in Items 3, 4, 5, 6, 8, 10, 11 and 13 of plaintiff's Request for Production of Documents with the following exceptions:

(a) Investigatory files related to internal investigations currently in progress regarding incidents arising prior to January 26, 1984, may be withheld until such time as the investigation is completed. At the conclusion of the investigation, defendants shall produce said documents to the plaintiff for inspection and copying. Defense counsel shall notify counsel for plaintiff of the nature of any documents withheld on this basis by August 5, 1984. *See* footnote 15 *supra.*

(b) Investigatory files and internal Police Department documents which defendants reasonably and in good faith allege contain identifying information from confidential informants may be withheld. Any documents so identified shall be delivered by defendants, under seal, to the Clerk of Court, Fayetteville, North Carolina, by August 5, 1984, to be immediately forwarded to this court for *in camera* inspection. At that time the court will decide whether the document should be discovered, discovered in modified form with identifying information deleted or wholly protected from disclosure to plaintiff.

(c) Material from investigatory files and internal Police Department documents which defendants reasonably and in good faith allege contain policy recommendations, personnel evaluations, official criticisms or opinions of supervisory personnel may be withheld. With regard to any document so withheld, defendants shall be in a position to make a strong showing that exceptional circumstances exist mandating suppression of the document because confidentiality in this instance is vital to the decision—making process of the municipality or disclosure would otherwise substantially harm the public interest. *See* footnote 14, *supra.* The court expects this assertion of privilege to be used in a limited, thoughtful and extremely discriminating manner. Any documents so identified shall be delivered by defendants, under seal, to the Clerk of Court, Fayetteville, North Carolina, by August 5, 1984, to be immediately forwarded to this court for *in camera* inspection. At that time the court will decide whether the document should be discovered, discovered in modified form or wholly protected from disclosure to plaintiff based upon the principles enunciated in this opinion.

3. If defendants wish to advance a claim of privilege as to material listed in 2(b) or 2(c), the claim should be addressed *with particularity* to *each* document as to which defendants assert an entitlement not to disclose, and shall as to each document

state a detailed reason for asserting the privilege. Each document delivered to the court for *in camera* inspection shall be marked for identification purposes and defendants shall submit a summary list of all documents delivered to the court with their appropriate identification numbers.

4. A back cut-off date of January 1, 1981, and a forward cut-off date of January 26, 1984, are established for purposes of this order on discovery.

5. Inspection and access to the documents and materials produced by defendants shall be absolutely limited to plaintiff's counsel and such persons as may be employed by plaintiff's counsel in connection with the plaintiff's preparation for trial or hearings in this matter. Plaintiff shall not disclose the contents of the documents and materials to any persons other than those described except by order of this court.

6. The parties are not to bring any disputes with respect to the requirements of this order before the court without an accompanying affidavit certifying the parties have conferred and attempted in good faith to resolve the dispute.

7. Counsel are expected to fully comply with this order. The court will impose severe and immediate sanctions in the event of non-compliance.

8. Defendants' motion to strike paragraph (2) of the prayer for relief contained in plaintiff's motion to compel is ALLOWED. Although the court disagrees with defendants' objections to the production of documents, as heretofore indicated, the court does not find those objections to be frivolous or made in bad faith. Therefore, the Clerk of Court is directed to STRIKE paragraph (2) of the prayer for relief contained in plaintiff's Motion to Compel Compliance with Request for Inspection, filed March 20, 1984.

9. Plaintiff's motion for attorneys' fees in conjunction with his motion to compel is STAYED pending the outcome of this litigation.

### SUMMARY

In conclusion, it is ORDERED that:

(1) the motion of plaintiff to amend his complaint is GRANTED and counsel for plaintiff is ALLOWED five (5) days from the date of service of this order to file plaintiff's amended complaint;

(2) the motion of defendant McDaniel to dismiss plaintiff's complaint is DENIED;

(3) the motion of defendants Dalton, Holman, Johnson, Dixon, Smith and City of Fayetteville to dismiss plaintiff's complaint is DENIED;

(4) the motion of defendants Holman and Johnson for summary judgment is DENIED;

(5) the motion of plaintiff to strike defendants' Second, Fourth, Sixth and Seventh Affirmative Defenses is GRANTED and the Clerk of Court is directed to strike said Affirmative Defenses from the copy of defendants' Answer, filed March 13, 1984;

(6) the motion of defendant City of Fayetteville to dismiss plaintiff's punitive damages claim against the City is GRANTED;

(7) the motion of plaintiff to compel production of documents is GRANTED and defendants' motion for a protective order is GRANTED in part and DENIED in part upon the terms and conditions previously described.

SO ORDERED.