Robert O. Baldi, Baldi & Cepparulo, P.C., New Hope, Pa., for plaintiff.

Kenneth L. Oliver, Jr., Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Township of Falls, James Kettler, Charles Chimera and August Baur.

## David CLARK

v.

## TOWNSHIP OF FALLS, James Kettler, Charles Chimera and August Baur.

### Civ. A. No. 88–3625.

United States District Court,
E.D. Pennsylvania.

Oct. 31, 1988.

### MEMORANDUM

NEWCOMER, District Judge.

This is an action for damages under 42 U.S.C. § 1983. Plaintiff David Clark, a police lieutenant employed by defendant Falls Township, claims that defendants deprived him of various first amendment rights and certain alleged property interests in his job. Clark has moved to compel production of an independent investigative report of the Falls Township Police Department. Defendant Township opposes the motion and submitted certain portions of the report to the court for in camera inspection. For the reasons discussed here-

in, the court will grant the motion subject to the conditions stated in the Order dated October 27, 1988.

## I. *Factual Background*

A brief discussion of the genesis of the report in question is necessary. The following representations are made by defendant Falls Township:

In January 1988, a new Board of Supervisors took office in Falls Township. The new Board was extremely concerned about several issues and disputes which had arisen in the Falls Township Police Department. Because of the presence of various factions within the Police Department which had been squabbling with each other over many years, the new Board was unable to ascertain the true state of facts in the Police Department. The Board wished to conduct independent investigations to resolve certain allegations and issues about the leadership and direction of the Police Department and to begin to put an end to the bickering which had previously existed within the department.

Three accusations or issues were brought to the Board's attention. First, there were issues pertaining to an internal investigation which Lieutenant David Clark had been conducting into certain alleged irregularities in the handling of various court cases pending before local district justices. . . .

Second, there were allegations that various police officials had improperly conducted "internal investigations" of Police Department officers. . . .

Finally, there were allegations that high level police officials, including the Police Chief and a now retired Lieutenant, had destroyed numerous Police Department records allegedly to cover up alleged personal misconduct.

In order to get to the bottom of these allegations, the Board of Supervisors directed its solicitor, Marcel Groen, to hire and oversee an inquiry by Mr. Joseph Murphy of Business Risks, Inc. ("BRI"). It is the reports of this inquiry which are at issue in this motion.

Defendant's Memorandum of Law in Response to Plaintiff's Motion to Compel Discovery [hereinafter Def's. Mem.], at 3–5.

BRI prepared three reports as a result of its investigation. Reports dated March 30, 1988, and June 6, 1988, pertain to the investigation of 186 criminal cases dismissed or withdrawn at the municipal court level in 1985, 1986, and 1987. A third report dated June 9, 1988, deals with investigations by BRI concerning internal investigations conducted by the Falls Township Police Department between January 1, 1985 and January 31, 1988, retention and destruction of records by the Department, and also sets forth BRI's evaluations and recommendations for the Falls Township Police Department. The June 9, 1988, report also contains analysis, criticism and evaluation of the Falls Township Police Department and its operation during the period of the investigation.[1] Falls Township opposes production of the reports on several grounds that may collectively be referred to as executive privilege.

## II. *Executive Privilege*

Executive privilege has been defined as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." *Spell v. McDaniel*, 591 F.Supp. 1090, 1115 (E.D.N.C.1984) (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D.Pa. 1973)). As applied to police records, this doctrine has customarily been justified on the grounds that their disclosure would chill the willingness of witnesses to give information during police investigations and that their disclosure would impede candid and conscientious self-evaluation of actions of the department. *Dos Santos v. O'Neill*, 62 F.R.D. 448, 449 (E.D.Pa.1974) (Newcomer, J.) (citation omitted).

---

1. The court received the following documents for in camera review: (1) BRI report dated March 30, 1988, with Exhibit A [hereinafter Report I]; (2) BRI report dated June 6, 1988, with Exhibits A–1, [no "B"], C, D, E, and F [Report II]; (3) BRI report dated June 9, 1988 [Report III]; and (4) BRI Exhibits A through E to June 9, 1988, report [Report III—Exhibits].

Courts have recognized, however, that the privilege is not absolute, and should be upheld only if the damage to the executive department or the public interest outweighs the harm to the plaintiffs from nondisclosure. *Spell*, 591 F.Supp. at 1116; *Dos Santos*, 62 F.R.D. at 449. Furthermore, a claim of executive privilege in an action brought under 42 U.S.C. § 1983 "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Scouler v. Craig*, 116 F.R. D. 494, 496 (D.N.J.1987) (quoting *Wood v. Breier*, 54 F.R.D. 7, 13 (E.D.Wis.1972)); *Spell v. McDaniel*, 591 F.Supp. 1090, 1116 (E.D.N.C.1984).

The court's balancing function requires consideration of a number of factors, the fullest characterization of which was made by then District Court Judge Becker:

> In the context of discovery of police investigation files in a civil rights case, however, at least the following considerations should be examined, (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973).

Based on an in camera review of the material submitted to the court, the contents of BRI documents may be summarized as follows: (1) Report I summarizes cases arising in Falls Township during the period January 1, 1985, to January 31, 1988, in which charges were withdrawn by the police or dismissed; (2) Report II discusses cases included in Report I in which mishandling, negligence, and mistakes occurred or in which the cause for dismissal could not be determined by BRI; and also includes various departmental orders (some of which are addressed to plaintiff Clark); (3) Report III discusses BRI's findings, commentary, and recommendations in connection with its investigation of: (a) internal investigations conducted by members of the Falls Township Police Department (including Plaintiff Clark); and (b) retention and destruction of records by the police department; and (4) Report III—Exhibits includes a grand jury report of public record (Exh. A); correspondence (Exh. B); a sentencing notice (Exh. C); record retention schedule (Exh. D); and internal memoranda relating to record control (Exh. E).

### III. *Analysis*

At the outset, the court is obliged to note significant facts which weigh heavily against Falls Township and its claim of executive privilege. Shortly after completion of the BRI investigation, an article appeared in the Bucks County Courier Times. *See* Plaintiff's Memorandum of Law in Support of Motion to Compel Discovery, Exhibit C (copy of article entitled "Low Morale Seen Among Falls Police," Bucks County Courier Times, June 29, 1988, at 1). This article includes quotations from and describes the BRI report, "a copy of which was obtained by the Bucks County Courier Times." Bucks County Courier Times, June 29, 1988, at 1. Although defendant is unable to identify the newspaper's source, the list of suspects appears quite limited: "Initially, all copies [of the reports] were maintained at the Solicitor's office. Subsequently, each of the Township Supervisors was given a copy of the documents and allowed to maintain custody

for a brief time. All copies are now in the possession of the Township Solicitor...." Def's.Mem. at 6.

Additionally, plaintiff alleges that Township Supervisor Richard Goulding confirmed at deposition that he let Bucks County District Justice Joseph Basile read the BRI report. Plaintiff's Motion to Compel Discovery, ¶ 16. District Justice Basile was interviewed by BRI as part of its investigation. Disclosure by an agent of Defendant Falls Township (i.e., Supervisor Goulding) seems unfair when, to the court's knowledge, none of the other interviewees or subjects of the investigation (including plaintiff Clark) have been accorded such an opportunity by the township.

Based on these disclosures to the newspaper and the district justice, the court finds that Falls Township waived its executive privilege with respect to the BRI report. However, because of the potential harm resulting from disclosure, I also have considered the *Frankenhauser* criteria.

■ Falls Township has cited several *Frankenhauser* factors that justify nondisclosure. Specifically, it argues that: police department self-evaluation and program improvement will be chilled by disclosure of the reports; police department evaluations must be kept confidential to be effective; disclosure of the reports would destroy the effectiveness of an ongoing process of improving the police department; the information sought by the plaintiff is available through other sources; and disclosure would unnecessarily intrude upon the privacy of those police officers and citizens named and discussed in the reports. The court must again note how these arguments are adversely affected by the aforementioned disclosures of the BRI study. In light of the disclosures, defendant's first three arguments are unconvincing. As to the fourth point, some of the information contained in the reports are available through other sources. As defendant indicates, plaintiff Clark likely possessed the names of all the police officers, supervisors, and other persons interviewed or mentioned in the reports. This argument misses the point, however, because it

would require unnecessary duplication of time and effort already expended. Disclosure of the reports to plaintiff Clark will avoid this extra expense and is consistent with the primary objective of the Federal Rules of Civil Procedure: "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1; *Mercy v. County of Suffolk*, 93 F.R.D. 520, 523 (E.D.N.Y.1982) (disclosure of an internal affairs file did not more than "expedite and facilitate the truth-seeking function of litigation").

As to defendant's fifth point, the court does have concerns about disclosure and the resulting intrusion upon the privacy of persons named in the reports. These concerns are primarily for private citizens and in particular, confidential informants, whose names might appear in the reports. *See Spell v. McDaniel*, 591 F.Supp. 1090, 1117 (E.D. N.C.1984); *Crawford v. Dominic*, 469 F.Supp. 260, 264 (E.D.Pa.1979). I note, however, that the parties in this matter previously entered into an agreement regarding the confidentiality of certain information produced by defendants in the course of this litigation. *See* Stipulation and Order with Respect to Confidentiality of Information Produced by Defendants.

As a result of the foregoing, the court will order production of the BRI report under the conditions stated in the Order dated October 27, 1988. As indicated therein, should either party wish to admit into evidence or otherwise use the BRI report at trial, the court would consider a motion by either party to redact or excise portions of the report that would unnecessarily intrude upon the privacy of persons named in the report or that otherwise should not be disclosed.

### ORDER

AND NOW, this 27th day of October, 1988, upon consideration of plaintiff's Motion to Compel Discovery and the response thereto and review of the documents in question, it is hereby Ordered that:

1. Defendant Falls Township shall produce a full and complete copy of the investigative report prepared by Business Risk

International, Inc. (BRI), to plaintiff no later than 5:00 p.m., Friday, October 28, 1988.

2. The BRI report shall be considered "CONFIDENTIAL INFORMATION" as that term is defined in the Stipulation and Order with Respect to Confidentiality agreed to by the parties and approved by the court on September 13, 1988. All terms of that Stipulation and Order shall be strictly observed by the parties with regard to the BRI report.

3. Should either party wish to admit into evidence or otherwise use the BRI report at trial, the court would consider a motion by either party to redact or excise portions of the report that would unnecessarily intrude upon the privacy of persons named in the report or that otherwise should not be disclosed.

AND IT IS SO ORDERED.