Cathy **EVERITT**, Plaintiff,

v.

Officer Jesse **BREZZEL**, Sergeant Harold Oaks, Denver Police Chief Aristedes W. Zavaras, Denver Manager of Safety Manual Martinez, Denver Mayor Federico Peña, acting individually and in their official capacity, and the City and County of Denver, Defendants.

No. 89–N–884.

United States District Court,
D. Colorado.

Nov. 15, 1990.

David Warren Holm, Denver, Colo., for plaintiff.

Theodore S. Halaby & Robert M. Liechty, Halaby & McCrea, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

Plaintiff has brought claims against certain Denver police officers, the City and County of Denver, its mayor, its manager of safety, and its chief of police. The lawsuit is in federal court because the claims include allegations that defendants have violated plaintiff's civil rights and are thus liable for damages under 42 U.S.C. § 1983 (1988). The case is now before the court on plaintiff's motion to compel discovery of information from internal police department files. The discovery dispute cannot be understood without a brief discussion of plaintiff's claims.

Cathy Everitt, a female taxicab driver, alleges that on May 23, 1988, Officer Jesse Brezzel verbally harassed and physically abused her while she was unloading passengers from her taxicab at Stapleton International Airport. She claims that Officer Brezzel shouted obscenities at her and mistook her for a man. Later, she says, he falsely arrested her, detained her for almost seven hours, and had her taxicab towed. Her Amended Complaint alleges violations of the Fourth, Fifth, and Fourteenth Amendments—by excessive use of force, false arrest, and deprivation of liberty and property without due process of law—for which Officer Brezzel is liable under 42 U.S.C. § 1983. She also alleges that the City and County of Denver, the mayor, the police chief, the manager of public safety, and Officer Brezzel's immedi-

ate supervisor, Sergeant Harold Oaks, are liable under 42 U.S.C. § 1983 because they "were aware, or should have been aware, of the propensity of Defendant Brezzel towards unnecessary violence and overreaction by the use of physical force and despite the foreseeable probability that Defendant Brezzel would engage in such conduct, carelessly, recklessly, or with deliberate indifference hired and failed to properly train or supervise Defendant Brezzel." *Amended Complaint* ¶ 59. Although Ms. Everitt originally brought a number of pendent state-law claims against all defendants, Judge Matsch, to whom this case was originally assigned, dismissed those claims on October 17, 1989.

As noted earlier, plaintiff has sought to discover certain information contained in Denver Police Department files. In particular, she asks for:

1. Officer Brezzel's log books or activity reports covering the time during which the incident took place, witness statements, officer statements, supervisory reports, tape recordings, videotapes, diagrams, and the like;

2. documentation relating to prior discipline, corrective actions, or reprimands concerning Officer Brezzel or Sergeant Oaks;

3. documentation concerning prior complaints against Officer Brezzel and Sergeant Oaks, where the complaints did not give rise to investigations or disciplinary proceedings; and

4. documentation regarding fitness reports, evaluations, performance appraisals, or similar determinations concerning the police officers' performance of their jobs.

Specifically included within the scope of these requests are copies of Internal Investigations Inspection Bureau Reports (commonly called "IIIB Reports") concerning internal administrative complaints and court complaints against Officer Brezzel.

Ms. Everitt has also propounded interrogatories to all defendants. These interrogatories concern Officer Brezzel's use of force on prior occasions, any counseling which he has undergone concerning his use

of force or inability to control his temper, his treatment for mental or emotional problems, and the background investigation conducted before he was hired. They also request the following information:

1. the substance of charges made against Officer Brezzel in prior police department administrative proceedings established to correct and prevent abuse of his authority as a police officer;

2. the names and addresses of persons who brought the charges;

3. the outcome of the proceedings; and

4. the name and address of the person responsible for administering disciplinary action, if any.

Defendants have generally responded to the discovery requests by objecting to the interrogatories and refusing to produce responsive documents, although they have supplied some limited information. Relying heavily on the Colorado Supreme Court's decision in *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980), they urge that the information sought is irrelevant, subject to an "official information" privilege, and/or protected by the officer's right to confidentiality. They further suggest that *Martinelli* compels a procedure under which they would tender all responsive documents to the court, so that the court can conduct an *in camera* inspection and withhold documents found to be privileged or irrelevant. They have represented that the *in camera* inspection procedure "has found widespread acceptance in the District of Colorado," although they have supplied no written orders to this effect.

■ I do not agree with defendants assertion, made without extensive discussion or analysis, that *Martinelli* supplies the rule governing discovery of police files, including the proposed procedure involving *in camera* review by the trial court. Discovery in the federal courts is governed by federal law as set forth in the Federal Rules of Civil Procedure, whether federal jurisdiction is based on the existence of a federal question or on diversity of citizenship. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941); *Hanna v.*

*Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *See also* 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2005 (1970 & Supp.1990). Thus, rule 26 of the Federal Rules of Civil Procedure will govern discovery of police files. Under that rule, "[p]arties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1) (emphasis supplied). The information sought must appear "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Despite defendants' protests to the contrary, it is plain to me that plaintiff's discovery requests satisfy the broad relevancy standard embodied in rule 26, especially since plaintiff has made claims against both the individual officers and the municipality. The question is whether the discovery requests cover "privileged" information.

■■■ In order to determine whether plaintiffs are asking for "privileged" information, I must first consider whether to look at federal law or state law. Where federal law provides the governing substantive law in a lawsuit, the federal common law of privileges will govern. *E.g. Kelly v. City of San José,* 114 F.R.D. 653, 655 (N.D.Cal.1987) ("At the outset it is important to emphasize that in a civil rights case brought under federal statutes questions of privileges are resolved by federal law."). *See also* Fed.R.Evid. 501 (questions of "privilege ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience"). Accordingly, since this case involves civil rights claims arising under 42 U.S.C. § 1983 (1988), I will look to federal common law to determine whether the materials are privileged.

■■ Defendants are claiming what federal courts have generally termed "executive privilege" or "official information privilege"—"the government's privilege to prevent the disclosure of information whose disclosure would be contrary to the public interest." *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 342 (E.D.Pa.1973). *See also*

*Kelly,* 114 F.R.D. 653 (reviewing various names attached to the privilege, such as "state secrets" privilege, "executive" privilege, "deliberative process" privilege, or "self-critical analysis" privilege, and persuasively concluding that, as applied to police files, the least misleading name is the "official information" privilege). As the Supreme Court has noted in a case involving executive privilege, federal courts narrowly construe *all* privileges, whether of constitutional, common-law, or statutory origin. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (Burger, C.J., for a unanimous Court). *See also Trammel v. United States,* 445 U.S. 40, 50–51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) (rejecting absolute privilege against adverse spousal testimony on the grounds that all privileges are to be "strictly construed" and will be rejected unless the grounds for the privilege "promotes sufficiently important interests to outweigh the need for probative evidence").

A leading federal case involving the official information privilege, as it relates to the discovery of police files in civil rights lawsuits filed under 42 U.S.C. § 1983, is Judge Becker's decision in *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa.1973). Judge Becker recognized the need to balance "the public interest in the confidentiality of governmental information against the need of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action." *Frankenhauser,* 59 F.R.D. at 344. He also recited ten matters which should be considered in deciding whether police files are protected by the privilege:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental

self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser,* 59 F.R.D. at 344.

In deciding whether police files and personnel records are covered by the official information privilege, I accept the general balancing approach reflected in *Frankenhauser* and other federal decisions, recognizing especially that the privilege prevents the disclosure of relevant evidence and is to be strictly construed. *See, e.g., Kelly,* 114 F.R.D. at 661. I do not believe, however, that the approach requires an *in camera* inspection by the courts in every instance where a plaintiff seeks to discover information from police files. Certain legal developments subsequent to the 1973 *Frankenhauser* decision, moreover, alter the significance of some of the issues considered there by Judge Becker. I now turn, first, to the *in camera* inspection procedure and then to the subsequent legal developments.

The *In Camera* Inspection Procedure.

▮ Defendants do not consider alternate ways of protecting the information shielded by the official information privilege. Instead, they propose that the court should examine all of the materials in question in every instance where the privilege is invoked. The proposal raises two related problems. First, courts are rarely, if ever, in the best position to evaluate one of the most crucial considerations suggested by *Frankenhauser*—the importance of the information sought to the plaintiff's case.

Judges can, of course, review the pleadings, but they do not have access to depositions, interrogatories, and other discovery responses; and, if they did, the task of reviewing the responses would usually be a daunting one. It is plaintiffs' counsel, not the courts, who know names, places, circumstances, and other facts. They are thus best able to determine whether the information is useful and, if so, how it substantiates their cases.

The second related problem raised by the *in camera* inspection procedure is that it leaves the courts to perform the balancing process in a vacuum, without the benefit of argument directed to each *Frankenhauser* consideration which should inform the process. Plaintiffs' counsel, knowing only that the court is reviewing information from police files, cannot tell the court why they believe a specific document is outside the protection of the privilege. Similarly, defendants' counsel, while they obviously know what is in the files, do not generally tell the court why the balancing should result in protection of a particular document; they simply assert that everything ought to be protected and leave it to the court to sort out the issues.

Because of the problems associated with *in camera* inspection by the court, I agree with Judge Matsch that "[a] more appropriate procedure is to provide for an *in camera* examination by [p]laintiff's counsel under a confidentiality order which he must obey as an officer of this [c]ourt." *Martinez v. Denver Sheriff's Department,* Civil Action No. 88–M–756 (D.Colo. Dec. 22, 1988) (unpublished Order for Production of Documents). Similar confidentiality orders are regularly used to facilitate discovery in cases where a party asserts that responsive information constitutes trade secrets or proprietary information. Such orders may appropriately provide for strict limitations concerning (1) the persons who may see documents, depositions, or other discovery responses, (2) the copying of the documents or responses, and (3) the use to which the documents or responses can be put. The orders may also provide for destruction of the materials or their return to defendants at the termination of the litigation.

In addition to a confidentiality order, the parties may consider two other procedures for dealing with the issues presented by the claim of an official information privilege. *First,* in their *initial* response to discovery under such an order, defendants may properly excise or redact names or other information which they regard as so sensitive or confidential that it should be shown to nobody—not even plaintiff's counsel. Counsel should then meet and confer regarding the redacted materials, as required by the local rule concerning discovery (United States District Court for the District of Colorado Rule 403 G). It may happen that plaintiff's counsel would regard the redacted information as unimportant to plaintiff's case. *Second,* in responding to discovery or trying to resolve a specific dispute, defendants should regularly supply a list, verified under oath: (1) specifying each item withheld (by type of document, date, author's name, general content, other persons or agencies to whom disclosure has been made, etc.); (2) describing the general nature of any redactions (*e.g.,* names of confidential informants); and (3) stating the specific *Frankenhauser* consideration which compels withholding the information, even with a confidentiality order in place. In this list, defendants should also state whether plaintiff is an actual or potential defendant in a criminal proceeding arising from the incident, whether the internal police department investigation has been completed, and whether further internal proceedings are anticipated—rather than leaving the court to speculate on these matters. Broad invocations of official information privilege as to entire files or categories of documents—which do not permit plaintiff's counsel to make reasoned argument or the court to make an informed balancing decision—will result in an order compelling production of all such files or documents and awarding attorney fees.

In outlining the procedures described in the preceding two paragraphs, I do not mean to preclude an *in camera* review by the court in every instance. In some cases particular documents which may be so sensitive, confidential and/or irrelevant that they should not even be shown to plaintiffs' counsel (*e.g.,* the results of a polygraph examination, *see Frankenhauser,* 59 F.R.D. at 341). These instances, however, should be the rare exception, as the confidentiality order, in most cases, adequately protects the interests shielded by the official information privilege. *See Clark v. Township of Falls,* 124 F.R.D. 91, 94 (E.D. Pa.1988). The discovery rules are supposed to be self-executing, and I see no reason why police files generally should be an exception to this rule.

Legal Developments Subsequent to *Frankenhauser.*

As noted, there are at least two legal developments subsequent to *Frankenhauser* which ought to affect the balancing process which it suggests. First, rule 11 of the Federal Rules of Civil Procedure was extensively amended in 1983 to clarify and expand the courts' ability to deal with frivolous cases. Thus, in my view, a defendant today cannot generally resist discovery of police files by arguing that a claim is frivolous or brought in bad faith (the eighth consideration suggested by *Frankenhauser*). If defendants believe a cause of action to be frivolous, the proper course of action is to promptly move to dismiss the complaint, to seek sanctions under Fed.R. Civ.P. 11 for a legally frivolous lawsuit, or both. If a defendant believes the lawsuit was filed for the improper purpose of rummaging through police files, sanctions under rule 11's "improper purpose" clause are available. *See Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830–831 (9th Cir. 1986) (discussing Rule 11's two clauses, its "frivolousness" clause and its "improper purpose" clause), *abrogated in part on other grounds, Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2457–2458, 110 L.Ed.2d 359 (1990) (appellate courts should review all aspects of district court's imposition of rule 11 sanctions under a deferential standard of review). *See also White v. General Motors Corp.,* 908 F.2d 675 (10th Cir.1990) (establishing the standard for district courts in the Tenth Circuit to follow in assessing rule 11 sanctions).

The second legal development which should affect the *Frankenhauser* analysis is the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Court held that municipalities and other local governmental units were "persons" upon whom liability could be imposed under 42 U.S.C. § 1983, overruling *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The Court, however, rejected *respondeat superior* or vicarious liability in tort as the principle for municipal liability under section 1983. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Instead, it required an official "policy" or "custom" for local governmental liability, stating:

We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–2038.

*Monell* bears on the significance of the third and fourth *Frankenhauser* considerations—whether the information sought is factual data or evaluative summary and the degree to which governmental self-evaluation would be chilled by disclosure. In making claims against Officer Brezzel's superiors and the municipality, Ms. Everitt seeks to establish that Officer Brezzel had engaged in similar conduct on prior occasions and that his superiors so condoned or tolerated the conduct that it became a "policy" for which the municipality is liable. Whether she is able to demonstrate conduct of such a type and frequency that it amounts to the municipality's "policy" is a question which can ultimately only be addressed on the merits. While a single prior violation may not ordinarily amount to a "policy," *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the municipality may be liable "where senior personnel have knowledge of

a pattern of constitutionally offensive acts by their subordinates, but fail to take remedial steps." *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied sub nom. Turpin v. City of Westhaven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

It is not possible to deal at the discovery stage of the case with many of the questions presented by *Monell* and its progeny. Suffice it to say that a plaintiff asserting municipal liability under *Monell* is entitled not only to factual information concerning an officer's alleged past violations, but also to information concerning his superiors' knowledge of those violations and what, if anything, they did about them. Thus, defendants must recognize that the "evaluative summaries" impliedly protected under *Frankenhauser* may be highly probative in a case concerning municipal liability. If these summaries are produced under the strict limits of a confidentiality order, the court can ultimately decide whether the evaluative actions reflected therein are sufficient to impose liability on the municipality.

In an effort to forestall arguments concerning the excision of witnesses' names by defendants, I will briefly and generally address the first two *Frankenhauser* considerations—the extent to which disclosure will discourage people from giving information and the impact on such persons of having their identities disclosed. I will consider two categories of people: (1) ordinary citizens who complain about conduct which they have observed or from which they have suffered and (2) police officers who complain of, or testify against, fellow officers. As to both categories, there should be a presumption that identities will be fully disclosed. In order to justify an *in camera* inspection, defendants would have to make a specific factual showing (1) that the person furnishing information did so on the express understanding that his identity would not be disclosed or (2) that other peculiar circumstances support a finding of confidentiality.

As to complaining citizens, this presumption favoring disclosure is justified, in my view, by the expectation which a citizen

complaining of police conduct would ordinarily have. Surely someone who feels victimized by such conduct, or who observes such conduct and feels strongly enough to report it, would anticipate—perhaps even encourage—the disclosure of his or her identity to another who feels aggrieved. As to police officers, the presumption is justified because it does not significantly add to the already-existing reasons why the officer might fail to complain of a fellow-officer or to give candid testimony in internal procedures. The internal procedures, after all, can result in severe personal sanctions—discipline of the officer involved or, in an extreme case, the filing of criminal charges. To say that an officer's candor in internal proceedings against a fellow-officer might be affected by the added knowledge that his name could later be discovered by a civil litigant is to indulge in unsupported speculation. Conclusion and Order.

In accordance with the views expressed herein, the parties shall, within 15 days of the date of this order, supply the court with proposed confidentiality orders. If possible, the parties should meet and agree on a single stipulated order; otherwise, I will review the proffered orders and then enter my own. Within ten days of the date on which the confidentiality order is entered, defendants will file supplemental responses to plaintiff's interrogatories and document requests. These supplemental responses will supply such answers and specify such documents as defendants are willing to produce under the confidentiality order. The responses will also contain the list of documents and materials discussed herein. The parties should then meet, pursuant to local rule 403 G, to see if they can narrow the areas of real dispute. Only if they cannot do so should plaintiff file a motion to compel, specifically describing the listed materials which she wants and the reasons supporting her requests. Rule 37(a)(4) will, of course, apply.

IT IS SO ORDERED.