**Brenda ATTEBERRY, Plaintiff,**

v.

**LONGMONT UNITED HOSPITAL, a Colorado nonprofit corporation, and John D. Leonard, M.D., Defendants.**

Civ.A. No. 03–D–488(BNB).

United States District Court, D. Colorado.

June 15, 2004.

Baine P. Kerr, Hutchinson, Black and Cook LLC, Boulder, CO, for Plaintiff.

Gilbert Ames Dickinson, Aimee Escueta, Dickinson, Prud'Homme, Adams & Ingram, LLP, Paul E. Scott, Daniel Ray McCune, Guy R. Cerasoli, Kennedy, Christopher, Childs & Fogg, PC, Denver, CO, for Defendants.

### ORDER

BOLAND, United States Magistrate Judge.

This matter is before me on the **Plaintiff's Motion to Compel Production of Documents By Defendant Longmont United Hospital** (the "Motion to Compel"), filed May 5, 2004. The motion is fully briefed. For the reasons stated below, the Motion to Compel is GRANTED.

### BACKGROUND

The plaintiff commenced this action in the state district court of Boulder County, Colorado, on March 6, 2003. The complaint asserts three claims for relief, including (1) violation of the federal Emergency Medical Treatment and Active Labor Act ("EMTA-LA"), 42 U.S.C. § 1395dd, against the hospital; (2) state law professional negligence against the doctor; and (3) state law negligent misrepresentation against the doctor. The case was removed by the defendants to this court on March 21, 2003.

The plaintiff alleges:

Ms. Atteberry is the mother of Scott Atteberry, deceased. She asserts that, when her son arrived at the Longmont United Hospital emergency room after a motorcycle accident, he was in hypovolemic shock from internal hemorrhages and unstable, with no blood pressure on oxygen saturation readings that could be obtained. She asserts that trauma surgeon Defendant Dr. Leonard should have taken her son to the operating room within one hour of his arrival at the hospital to stop his bleeding and save his life. Instead, Dr. Leonard negligently allowed Scott Atteberry to continue to bleed, remain unstable and deteriorate his entire three hours in the emergency room. She asserts that her son should not have been transferred out of the emergency department and that the transfer to St. Anthony's Hospital Flight for Life helicopter violated the Emergency Medical Treatment and Active Labor Act ... in that he had not been stabilized, medical treatment to minimize his risks had not been performed, and as Defendants admit, no written requests or signed certification for transfer that comply with § 13955dd(c)(1)(A)(ii) or (iii) were ever obtained. Ms. Atteberry asserts that Dr. Leonard's negligent failure to stop her son's bleeding and negligent order that he leave Longmont United Hospital and be taken to Denver, as well as the violations of EMTALA, caused Scott Atteberry to suffer cardiac arrest in the St. Anthony's helicopter due to exsangination, and to bleed to death shortly thereafter.

Scheduling Order, at pp. 1–2.

The discovery at issue here involves requests for production seeking the following materials:

1. Any reports, files or reviews that refer or relate to Scott Atteberry's care on April 28, 2001, including, but not limited to any quality assurance reports, peer review reports and morbidity/mortality reports.

7. Any and all reports relating to Dr. Leonard, including, but not limited to, credentialing files, peer review files, quality assurance reports, morbidity/mortality reports, hospital privileges, and any reports relating to the deaths of patients under his care.

Longmont Hospital objected to the production requests, asserting that the requested information is protected from discovery by (1) the federal Health Care Quality and Assurance Act, 42 U.S.C. § 11101, et seq.; (2) the Colorado state peer review privilege, section 12–36.5–104, C.R.S.; (3) the Colorado state quality management privilege, 25–3–109, C.R.S.; (4) the doctrine of *Hawkins v. District Court*, 638 P.2d 1372 (Colo.1982); (5) the attorney-client privilege; and (5) the work product doctrine.

## ANALYSIS

### 1. Federal Law Governs the Issue of Privilege

■ Discovery in the federal courts is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship. *Everitt v. Brezzel,* 750 F.Supp. 1063, 1065 (D.Colo.1990). Rule 26(b)(1), Fed.R.Civ.P., defines the scope of discovery:

> Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(Emphasis added.)

■ Where, as here, there is a claim of privilege, I must determine whether federal or state law governs the existence of the claimed privilege. *Everitt,* 750 F.Supp. at 1066. "Where federal law provides the governing substantive law in a lawsuit, the federal common law of privileges will govern." *Id.* See also Fed.R.Evid. 501 (questions of "privilege ... shall he governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience"). In this case, federal law provides the rule of decision with regard to the EMTALA claim. In addition, the federal law of privilege governs even where the evidence sought also may be relevant to pendent state law

claims. *Hancock v. Hobbs*, 967 F.2d 462, 466–67 (11th Cir.1992); *Robertson v. Neuromedical Center*, 169 F.R.D. 80, 82–82 (M.D.La.1996). Consequently, I look to federal common law to determine whether the requested materials are privileged.

### 2. The Health Care Quality Improvement Act Does Not Create a Federal Peer Review Privilege

■ Courts repeatedly have held that the Health Care Quality Improvement Act does not create a federal statutory privilege. For example, in *Robertson v. Neuromedical Center*, 169 F.R.D. at 83–84, the court held:

> There is no historical or statutory basis for a peer review materials privilege.... The federal Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101, et seq., provides qualified immunity for persons providing information to a professional review body regarding the competence or professional conduct of a physician. 42 U.S.C. § 11111(a). It also established confidentiality for information reported under the act, *but did not establish confidentiality for peer review records or protect peer review records and materials from discovery and court subpoena.* The absence of such a privilege in this statute is evidence that Congress did not intend these records to have the level of confidentiality and protection advanced by the hospitals and provided in the state statute.

(Emphasis added.) *Accord Poliner v. Texas Health Systems*, 201 F.R.D. 437, 438 (N.D.Tex.2001)(noting that the HCQIA does not create a bar to discovery of materials relating to peer review committees); *United States v. QHG of Indiana, Inc.*, 1998 WL 1756728 *7 (N.D.Ind. Oct. 8, 1998)(noting that "Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA"); *Syposs v. United States*, 179 F.R.D. 406, 410 (W.D.N.Y.1998)(noting that no federal statutory peer review privilege exists under the Health Care Quality Improvement Act).

### 3. The Colorado State Privileges Are Not Applicable Here

■ Longmont United Hospital argues that I should apply the asserted Colorado state law privileges, even if not required to do so, as a matter of comity:

> [F]ederal courts should consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law. A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. And where a state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule....
>
> The principal of comity is not limited to diversity cases, and this Court should look to Colorado's policy of protecting the confidentiality of quality assurance and peer review proceedings.... [A]s a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests.

Defendant Longmont United Hospital's Response to Plaintiff's Motion to Compel Production of Documents, filed May 27, 2004, at pp. 4–5 (internal quotations and citations omitted).

Neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has recognized a medical peer review or medical risk management privilege under federal common law. *Sonnino v. University of Kansas Hospital Authority*, 220 F.R.D. 633, 644 (D.Kan.2004). To the contrary:

> The Supreme Court has cautioned that an evidentiary privilege should not be recognized or applied unless it promotes sufficiently important interests to outweigh the need for probative evidence. Because privileges contravene the fundamental principle that the public has a right to every man's evidence, any such privilege must be strictly construed. Moreover, although Rule 501 manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privileges on a case-by-

case basis, the courts are disinclined to exercise this authority expansively.

*Id.* (internal quotations and citations omitted).

Although presented with the opportunity to do so when enacting the federal Health Care Quality Improvement Act, the Congress failed to create an analogous federal privilege. *United States v. QHG of Indiana, Inc.,* 1998 WL 1756728 at *7 (noting that "Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA"). Every legislative and controlling judicial indication is that federal policy, under these circumstances, opposes recognition of the quality management and peer review privileges enacted by the State of Colorado. *See Patt v. Family Health Systems, Inc.,* 189 F.R.D. 518, 523–24 (E.D.Wis.1999), *aff'd* 280 F.3d 749 (7th Cir.2002).

Nor is it clear that the state law privileges would apply to these facts. In order to be entitled to the peer review privilege created by section 12–36.5–104(10)(a), the information must constitute the "records of a professional review committee, a governing board, or a committee on anticompetitive conduct," *id.,* and must be derived from an investigation "conducted in conformity with written bylaws, policies, or procedures" adopted by a professional organization, entity, or society. Section 12–36.5–104(6)(b), C.R.S. Similarly, the quality management privilege created by section 25–3–109 attaches only to "quality management functions which are described by a facility in a quality management program approved by the department of health and environment." Sections 25–3–109(2)–(3), C.R.S. Although I have been provided with the Longmont United Hospital Medical Staff Organization and Functions Manual and the Longmont United Hospital Medical Staff Bylaws, I have not been directed to a specific section which creates a professional review committee, defines its functions, or establishes its procedures; nor have I been provided with any evidence that the hospital has a quality management program approved by the department of health and environment or that the materials sought are "records, reports, or other information ... that are part of a quality management program...." My independent review of the record before me does not indicate that the prerequisites to the claimed privileges have been met.

### 4. *Hawkins v. District Court* Is Not Applicable

In *Hawkins v. District Court,* 638 P.2d 1372 (Colo.1982), the Colorado Supreme Court ruled that reports made and statements taken by an insurance company in the normal course of investigating a claim are prepared in the regular course of business and not in anticipation of litigation or trial. Consequently, those documents ordinarily are not protected from discovery under the work product doctrine. The *Hawkins* decision concerns a state law privilege and is factually distinct from the issues presented here. In any event, the claim of immunity under *Hawkins* in this case appears to have been abandoned by the defendants, because it is not addressed in their briefs in opposition to the Motion to Compel.

### 5. Longmont United Hospital Has Failed to Establish That Any Responsive Document Is Subject to the Attorney–Client Privilege or Work Product Doctrine

Rule 26(b)(5), Fed.R.Civ.P., establishes the procedure a party must follow when objecting to discovery on the basis of a claim of privilege:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged ..., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Longmont United Hospital, as the party asserting the attorney-client privilege and work product doctrine, must "provide sufficient information to enable the plaintiffs and the court to determine whether each element of the asserted objection is justified." *Epling v. UCB Films, Inc.,* 2000 WL 1466216 *19 (D.Kan. Aug. 7, 2000). A blanket claim of

privilege will not suffice. *Id.* The failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege asserted. *Haid v. Wal–Mart Stores, Inc.,* 2001 WL 964102 *1 (D.Kan. June 25, 2001).

■ In *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984), the circuit court of appeals held:

> A party seeking to assert [a] privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made. Even though it does not seem seriously disputed that the privilege would have attached if the objection had been timely made and adequately asserted, that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege. It is not enough that a document would have been privileged if an adequate and timely showing had been made. The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document.

Longmont United Hospital has failed to make an adequate showing to establish the applicability of the attorney-client privilege or work product doctrine to any document responsive to Requests for Production Nos. 1 and 7. There is no privilege log whatsoever or other attempt by the hospital to provide sufficient information "to enable the plaintiffs and the court to determine whether each element of the asserted objection is justified." *Epling,* 2000 WL 1466216 at *19.

### 6. The Requested Documents Are Discoverable

Finally, I find that Requests for Production Nos. 1 and 7 seek materials relevant to the claims and defenses of the parties or appear reasonably calculated to lead to the discovery of admissible evidence. The requests are within the scope of discovery permitted under Rule 26(b), Fed.R.Civ.P.

### CONCLUSION

The defendants have failed to establish any privilege protecting from discovery the materials responsive to Requests for Production Nos. 1 and 7, and those materials are discoverable. Accordingly,

IT IS ORDERED that the Motion to Compel is GRANTED.

IT IS FURTHER ORDERED that Longmont United Hospital shall produce all documents responsive to Requests for Production Nos. 1 and 7 at a time and place as may be agreed to by the parties, not later than **June 21, 2004.**